CRP SERVICES, LLC
13335 Noel Road, Suite 1825
Dallas, TX 75240
(972) 702-7333 (Telephone)
(972) 702-7334 (Facsimile)

Former Chief Restructuring Officer for the
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **GENERAL MEDIA, INC., <u>et</u> al.** | ) | **Case No. 03-15078 (SMB)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |

**FIRST APPLICATION OF CRP SERVICES, LLC AS INDEPENDENT
CONTRACTOR PROVIDING MANAGEMENT SERVICES FOR THE
DEBTORS AND DEBTORS IN POSSESSION FOR INTERIM
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF
EXPENSES FOR SERVICES RENDERED DURING THE PERIOD
AUGUST 12, 2003 THROUGH DECEMBER 19, 2003**

| | |
|---|---|
| Name of Applicant: | CRP Services, LLC |
| Authorized to Provide<br>Professional Services to: | Debtors and Debtors in Possession |
| Date of Retention: | December 19, 2003, <u>nunc</u> <u>pro</u> <u>tunc</u> to August<br>12, 2003 |
| Period for which Compensation<br>and reimbursement is sought: | August 12, 2003 through December 19, 2003 |
| Amount of compensation<br>sought as actual, reasonable<br>and necessary: | $1,046,436.00 |
| Amount of reimbursement<br>sought as actual, reasonable<br>and necessary: | $105,244.63 |
| This is an interim application | |

**GENERAL MEDIA, INC., ET AL.**
**CRP SERVICES, LLC**
**COMPENSATION BY PROJECT CATEGORY FOR THE**
**PERIOD AUGUST 12, 2003 THROUGH DECEMBER 19, 2003**

| Category | Hours | Net Totals |
|---|---|---|
| Cash Management | 472.35 | 187,396.41 |
| Creditor Mgmt/Communications | 347.77 | 141,304.67 |
| Case Admin and Management | 135.98 | 56,007.50 |
| Operations Mgmt/Analysis | 776.60 | 310,373.50 |
| Disclosure Statement and Plan of Reorganization | 218.73 | 76,820.00 |
| Asset Sales | 456.87 | 152,410.41 |
| Fee Applications | 32.13 | 13,151.00 |
| Travel | 550.60 | 108,972.51 |
| **Net Totals** | **2,991.03** | **$1,046,436.00** |

## GENERAL MEDIA, INC., ET AL.
## CRP SERVICES, LLC
## FEE SUMMARY
## AUGUST 12, 2003 THROUGH DECEMBER 19, 2003

| Name | Reg. Hours | Reg. Rate | Regular Fees | Travel Hours | Travel Rate | Travel Fees | Total Hours | Blended Rate | Total Fees |
|------|-----------|-----------|--------------|--------------|-------------|-------------|-------------|--------------|------------|
| **A. Snyder** | 139.00 | 175.00 | 24,325.00 | 32.00 | 87.50 | 2,800.00 | 171.00 | 158.63 | 27,125.00 |
| **D. Dixon** | 778.73 | 390.00 | 303,706.00 | 165.00 | 195.00 | 32,175.00 | 943.73 | 355.91 | 335,881.00 |
| **JC Crouse** | 757.64 | 325.00 | 246,219.99 | 133.06 | 162.50 | 21,628.76 | 890.70 | 300.72 | 267,848.75 |
| **S. Avila** | 765.10 | 475.00 | 363,212.50 | 220.50 | 237.50 | 52,368.75 | 985.60 | 421.65 | 415,581.25 |
| **W. Snyderl** | 0.00 | 475.00 | 0.00 | 0.00 | 237.50 | 0.00 | 0.00 | 475.00 | 0.00 |
| **Grand Total** | **2,440.47** | **384.13** | **937,463.49** | **550.56** | **197.93** | **108,972.51** | **2,991.03** | **349.86** | **1,046,436.00** |

**GENERAL MEDIA, INC., ET AL.**
**CRP SERVICES, LLC**
**DISBURSEMENT SCHEDULE**
**AUGUST 12, 2003 THROUGH DECEMBER 19, 2003**

| EXPENSE DESCRIPTION | TOTAL |
|---|---|
| Airfare | 34,805.05 |
| Ground Transportation | 8,147.25 |
| Lodging | 49,140.86 |
| Mail/Postage | 883.51 |
| Meals | 12,274.12 |
| Miscellaneous | 265.05 |
| Phone | 428.90 |
| Supplies | 559.89 |
| Admin – Credit | (1,260.00) |
| **Total** | **$105,244.63** |

CRP SERVICES, LLC
13335 Noel Road, Suite 1825
Dallas, TX 75240
(972) 702-7333 (Telephone)
(972) 702-7334 (Facsimile)

Former Chief Restructuring Officer for the Debtor and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **GENERAL MEDIA, INC., <u>et</u> <u>al.</u>** | ) | **Case No. 03-15078 (SMB)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered )** |
| | ) | |

**FIRST APPLICATION OF CRP SERVICES, LLC AS INDEPENDENT
CONTRACTOR PROVIDING MANAGEMENT SERVICES FOR THE
DEBTORS AND DEBTORS IN POSSESSION FOR INTERIM
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF
EXPENSES FOR SERVICES RENDERED DURING THE PERIOD
<u>AUGUST 12, 2003 THROUGH DECEMBER 19, 2003</u>**

**TO:    THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE**

CRP Services, LLC ("CRP" or the "Applicant"), independent contractor to General

Media, Inc., <u>et al.</u> (the "Debtors"), for its first interim application (the "Application") pursuant to

11 U.S.C. §§ 330 and 331, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"); the Guidelines for Fees and Disbursements for Professionals in Southern

District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and amended

April 21, 1995; the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 effective January

30, 1996; and this Court's Administrative Order, Pursuant to Sections 105(a) and 331 of the

Bankruptcy Code Establishing Procedures for Monthly Compensation and Reimbursement of

Expenses of Professionals, dated October 3, 2003 (the "Administrative Fee Order") for an

interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents:

## I. INTRODUCTION

1. By this Application, CRP seeks (i) an interim allowance and award of compensation for the professional services rendered by CRP as an independent contractor for the Debtors for the period from August 12, 2003 through December 19, 2003 (the "Compensation Period") and for time spent preparing this Application, in the amount of $1,046,436.00, representing 2991.03 hours of professional services; and (ii) reimbursement of actual and necessary expenses incurred by CRP during the Compensation Period in connection with the rendition of such professional services in the amount of $105,273.73.

2. Pursuant to the Administrative Fee Order, CRP is seeking the interim award and the full payment of $1,046,436.00 of fees and $105,273.73 for reimbursement of its expenses incurred in connection with services rendered on behalf of the Debtors during the Compensation Period. This request reflects a voluntary, courtesy fee discount of $11,780.00. CRP also reserves its right to request a success fee in these cases.

## II. BACKGROUND

3. On August 12, 2003 (the "Petition Date"), the Debtors filed with this Court their voluntary petitions for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

4. General Media, Inc. ("General Media"), one of the Debtors, is a Delaware corporation headquartered in New York, New York. As of the Petition Date, General Media, in conjunction with the other Debtors, (i) engaged in the publication and sale of men's magazines, (ii) the sale of various adult-oriented entertainment products and services, and (iii) the licensing

of its trademarks to publishers in foreign countries and for use on various consumer products and services.

5.     The Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered.

6.     No trustee or examiner has been appointed in these cases.

7.     On August 21, 2003, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

8.     On September 16, 2003, the Debtors filed their Motion Pursuant to Section 363 of the Bankruptcy Code for Authorization to Enter into an Agreement to Employ CRP Services, LLC as an Independent Contractor to Provide Management Services for the Debtors and Debtors in Possession, *Nunc Pro Tunc* to August 12, 2003.  On October 9, 2003, this Court entered its Order Pursuant to 11 U.S.C. §363 Authorizing the Debtors to Enter Into An Agreement to Employ CRP Services, LLC as an Independent Contractor to Provide Management Services for the Debtors *Nunc Pro Tunc* to August 12, 2003.

9.     The Agreement for Professional Services, between General Media and CRP, dated as of August 12, 2003 (the "CRP Engagement Letter"), provides for the compensation of CRP, as follows:

        4.     <u>Compensation</u>.

              a.     The following rates shall apply for CRP Services professionals who will be needed to fulfill CRP Services' obligations under this Agreement:

- Scott Avila – $475 per hour
- Dan Dixon – $390 per hour
- Cooper Crouse – $325 per hour
- Associates – $150 to $200 per hour

b.     CRP Services shall charge 50% of the above hourly rates for all time expended by CRP Services professionals incurred in traveling from the professionals' place of residence to the Debtors' location.

c.     A success fee of $350,000, to be paid in six-equal monthly installments, upon either (i) the sale of substantially all of the Debtors' assets or (ii) the confirmation of a Plan of Reorganization.

d.     CRP Services shall be reimbursed for all reasonable expenses incurred directly relating to any work undertaken hereunder. Such expenses include but are not limited to: travel, lodging, meals, equipment and vehicle rental, clerical supplies and services, and telephone, fax and photocopying charges. Requests for reimbursement of these expenses will be submitted to the Bankruptcy Court in conjunction with CRP Services' periodic fee applications.

e.     CRP Services shall seek payment of its fees and disbursements on a periodic basis in accordance with sections 330 and 331 of the Bankruptcy Code and any Orders with respect to compensation procedures entered by the Bankruptcy Court in the chapter 11 cases.

CRP Engagement Letter at 2-3. The CRP Engagement Letter also provides that "either the Debtors or CRP Services may terminate this Agreement upon ten (10) days' prior written notice to the other party, with payment due to CRP Services for services rendered and expenses incurred through the termination." Id. at 2.

10.     On or about December 16, 2003, the Debtors notified CRP of their election to terminate CRP's services under the CRP Engagement Letter. The Debtor's termination letter to CRP expressly states that the termination was without cause.

11.     On December 22, 2003, the Debtors filed (i) Debtors' Joint Plan of Reorganization (the "Plan") and (ii) Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Debtors' Joint Plan of Reorganization (the "Disclosure Statement").

12.	On December 24, 2003, the Debtors filed their Motion Pursuant to Section 363 of the Bankruptcy Code for Authorization to Enter into an Agreement to Employ Seneca Financial Group, Inc. ("Seneca") as an Independent Contractor to Provide Management Services for the Debtors and Debtors in Possession *Nunc Pro Tunc* to December 16, 2003. The proposed agreement between Seneca and the Debtors provides for a monthly flat fee and does not provide for the payment of a success fee of any kind to Seneca.

13.	CRP has received no payment and no promises for payment from any source for services rendered in connection with these chapter 11 cases. There is no agreement or understanding between the Applicant and any other person (other than members of CRP) for the sharing of compensation to be received for the services rendered in connection with these chapter 11 cases.

14.	As stated in the Affirmation of T. Scott Avila, annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for or on behalf of the Debtors solely in connection with these chapter 11 cases.

15.	Pursuant to the Administrative Fee Order, during this Compensation Period, CRP served on the Debtors and the other notice parties identified therein CRP's (i) monthly fee statement, dated October 15, 2003, for services rendered during the period of August 12, 2003 through August 31, 2003 in the amounts of $167,219.75 for fees and $21,564.22 for expenses (the "August Monthly Fee Statement"); (ii) monthly fee statement, dated October 15, 2003, for services rendered during the period September 1, 2003 through September 30, 2003 in the amounts of $311,078.25 for fees and $25,386.01 for expenses (the "September Monthly Fee Statement"); (iii) monthly fee statement, dated November 12, 2003, for services rendered during the period October 1, 2003 through October 31, 2003 in the amounts of $251,578.87 for fees and $26,317.31 for expenses (the "October Monthly Fee Statement"); (iv) monthly fee statement,

dated December 10, 2003, for services rendered during the period November 1, 2003 through November 30, 2003 in the amounts of $183,230.25 for fees and $17,499.40 for expenses (the "November Monthly Fee Statement"); (v) monthly fee statement, dated January 6, 2003, for services rendered during the period December 1, 2003 through December 19, 2003 in the amounts of $125,003.88 for fees and $16,935.55 for expenses (the "December Monthly Fee Statement") (the "December Monthly Fee Statement" and, together with the August Monthly Fee Statement, the September Monthly Fee Statement, the October Monthly Fee Statement, and the November Monthly Fee Statement, the "Monthly Fee Statements").

16. Pursuant to the Administrative Fee Order, as of the date of this Application, CRP has received payment of 80% of the fees requested and 100% of the expense reimbursements requested with respect to the August, September and October Monthly Fee Statements. CRP has received no payment in respect of its November and December Fee Statements.

### III. JURISDICTION

17. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rules 2002(a) and 2016.

### IV. SUMMARY OF SERVICES RENDERED

18. Since August 12, 2003 and continuing during the Compensation Period, CRP rendered professional services to the Debtors as requested and as necessary and appropriate in these cases. The variety and complexity of the issues in these chapter 11 cases and the need to act or respond to such issues on an expedited basis in furtherance of the Debtors' needs have required the expenditure of substantial time by CRP personnel, on an as-needed basis.

19. CRP maintains written records of the time expended by its personnel in the rendition of their professional services to the Committee. CRP's time records were contemporaneously made with the rendition of services by the person rendering such services. A compilation showing the name of the CRP professional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period, and during the course of CRP's preparation of this Application, is annexed hereto as Exhibit "B." Attached hereto as Exhibit "C" is a schedule of the hours expended by the professionals during the Compensation Period and during the course of preparing this Application, their normal hourly rates, and the value of their services.

20. CRP also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which also are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit "D".

21. CRP respectfully submits that the professional services that it rendered on behalf of the Debtors were necessary and appropriate and have directly contributed to the effective administration of these chapter 11 cases.

22. The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of those areas in which services were rendered for the Debtors, as well as to identify some of the problems and issues that CRP was required to address.

(i) <u>Treasury Management</u>

23. CRP assumed the responsibility for all of the Debtors' treasury operations. In this capacity CRP was responsible for all the Debtor's activities with respect to the Financing

Agreement, dated as of August 14, 2003 between the Debtors, the lenders party thereto and certain other parties (along with all amendments thereto, the "DIP Credit Facility"), critical vendor and trade vendor management, cash management, and financial reporting.

24.     For example, CRP prepared the weekly and monthly financial reporting information required under the DIP Credit Facility as well as additional information requested by the lenders thereunder and the Committee's advisors. The financial reporting information served as the primary analytical tool for the Debtors' creditor constituents and their professionals in analyzing the Debtors' operations. This information included, among other things, (i) weekly cash reports, including cash flow projections and a discussion of the assumptions supporting such projections, (ii) weekly variance reporting, including schedules and narratives describing the Debtors' performance against the covenants and budget incorporated in the DIP Credit Facility, and (iii) monthly reporting packages, including comprehensive income statements, balance sheets, and income statement analysis.

25.     CRP also analyzed and negotiated a settlement with the Debtors' distributor which had terminated monthly cash advances to the Debtors. The monthly cash advances were the primary source of cash for the Debtors' business and without these customary advances, the Debtors would have been required to convert the case to a chapter 7 proceeding. The successful settlement with the distributor thwarted a motion to convert the case to a chapter 7 proceeding filed by the Committee. CRP also established a treasury management system with a new financial institution after the termination of the Debtors' cash management relationship with its pre-petition bank.

26.     In addition, CRP (i) prepared the underlying analysis supporting the Debtors' critical vendor program and managed the payments under this program (resulting in significant savings to the estate), (ii) was actively involved in all discussions and negotiations with key trade

vendors for the provision of goods and services to the Debtors on a post-petition basis, (iii) negotiated agreements with trade vendors that provided the vendors with necessary assurances that they would be paid post-petition, resulting in the provision of critical post-petition supplies for the operation of the Debtors' business and (iv) negotiated with certain key trade vendors in order to enter into an assignment agreement which resulted in substantial increases in post-petition working capital available to the Debtors.

        (ii)    <u>Creditor Management and Communications</u>

    27.    CRP's professionals were involved in all day-to-day operating activities of the Debtors' business. CRP was also involved in the management of all cash management reporting requirements under the DIP Credit Facility, as well as the restructuring process itself. In such capacity, CRP communicated frequently with the lenders under the DIP Credit Facility, the Committee, the Committee's counsel, the Committee's advisors and the Debtors' trade vendors regarding, (i) the reporting requirements mandated under the DIP Credit Facility and (ii) the Debtors' operating performance, the progress of the sales process and the development of the Plan. CRP also had responsibility for (i) managing meetings and negotiations with the Debtors' primary trade creditors regarding monthly cash advances and (ii) reestablishing constructive relationships with vendors that provided critical products and services including but not limited to, paper and printing suppliers, magazine distribution, video distribution, credit card processing, insurance and circulation reporting and analysis.

        (iii)    <u>Case Management and Administration</u>

    28.    CRP was involved in all management and administrative aspects of the Debtors' bankruptcy proceedings. CRP's responsibilities in this area included, but were not limited to (i) preparation of all first day orders, (ii) preparation of the Debtors' statement of financial affairs and all associated bankruptcy schedules, (iii) preparation of the monthly operating reports for all

nine Debtor entities, (iv) attendance at various court hearings and meetings (v) review of various court filings, (vi) planning and execution of the accounting transition between pre-petition and post-petition activity, (vii) public relations activities, including interviews with the press and development of press releases, and (viii) resolving reclamation and breach of contract claims.

        (iv)     Operations Management & Analysis

29.     Pursuant to the demands of the lenders under the DIP Credit Facility, CRP was required to manage all aspects of the management and operations of the Debtors' business. Accordingly, CRP managed the day-to-day operations of the Debtors' business and restructuring activities while working to improve the Debtors' profitability.

30.     Day-to-Day Management of the Debtors' Business. Beginning on the Petition Date, CRP's activities included, but were not limited to, (i) developing and implementing a management system that provided the Debtors' senior management team with a means of addressing numerous issues associated with day-to-day operating activities, various profit improvement programs, and the global restructuring of the Debtors' organization, (ii) reestablishing a consistent publishing schedule for the Debtors' publications in order to improve the Debtors' liquidity, (iii) securing the reinstatement of health and general business insurance, (iv) negotiating certain agreements with the Debtors' video distributor which resulted in the receipt of $180,000, (v) identifying a new vendor that could facilitate continued subscriber processing, ensuring approximately $100,000 in weekly cash receipts, (vi) reestablishing relationships with third party advertising research companies which supply data critical for the continuation of the Debtors' advertising revenue, (vii) resolving conflicts over the post-petition use of copyrighted materials with photographers, cartoonist and writers, facilitating the Debtors' access to critical content for use in the Debtors' business, (viii) implementing policies and procedures concerning the release of copyrighted materials to international licensees, ensuring a

continuing revenue stream from the Debtors' international publications, (ix) facilitating the Debtors' continued web site presence, allowing for associated cash receipts of $100,000 per week, and (x) negotiating assignment agreements between the Debtors' magazine distributor and its critical printers and paper suppliers that allowed for the Debtors' publications to continue to be produced.

31.     <u>Profit Improvement/Restructuring</u>.  Following a 39% decline in the Debtors' publications' domestic average monthly newsstand circulation between 1997 and 2002, and an associated decline in revenues, CRP commenced various actions to improve the profitability of the Debtors' operations, which included, among other things, (i) implementing certain modifications to production processes that will save the Debtors $1.4M per year, (ii) analyzing publication profitability and other factors to maximize profits and cash flow, (iii) reducing warehousing expenses through facility consolidation, (iv) restructuring the Debtors' Internet operations, resulting in annualized savings of $200,000, (v) analyzing the profitability of the Debtors' third-party audio text, Internet, video production and video distribution relationships and identifying alternatives to improve profitability in each area, (vi) analyzing and rejecting certain equipment leases in order to reduce future liabilities by over $185,000, (vii) developing and implementing certain DVD marketing initiatives to increase the circulation of the Debtors' publications, (viii) reestablishing web-hosting services with a lower cost service provider generating annualized savings in excess of $400,000, (ix) identifying alternative locations for the Debtors' corporate offices that will reduce annual operating expenses by $1.2M, and (x) developing a plan for the comprehensive restructuring of the Debtors' business, resulting in multiple offers to purchase the Debtors' assets in excess of the price originally anticipated by the key parties in interest.

(v)     <u>Disclosure Statement and Plan of Reorganization</u>

32. CRP was actively involved in the preparation of the Debtors' Plan and Disclosure Statement. Among other things, CRP was involved in, (i) developing a detailed liquidation analysis for all of the Debtors' entities individually and on a consolidated basis and preparing text to be included in the Disclosure Statement referencing such liquidation analysis, (ii) performing an analysis to identify the characteristics of an optimal convenience class of creditors for inclusion in the Plan, (iii) analyzing all classes of claims and estimating the amount of allowed claims in each creditor class, (iv) attending various meetings and telephone conversations with key parties in interest in order to formulate the Plan, (v) developing detailed financial projections that supported the feasibility of the reorganization, (vi) analyzing executory contracts and unexpired leases, and (vii) compiling operating data to be included in the Debtors' Disclosure Statement.

(vi) <u>Asset Sales</u>

33. CRP conducted a comprehensive sales process to market the Debtors' assets, which included, among other things, (i) contacting approximately 89 potential strategic and financial buyers in the US, Europe and Asia, (ii) developing a preliminary offering memorandum, (iii) distributing and negotiating confidentiality agreements, which were executed by 31 parties, (iv) compiling, digitizing and distributing due diligence materials, (v) developing detailed financial projections of the restructured business, (vi) responding to additional due diligence requests for information and (vii) coordinating multiple on-site visits by parties interested in purchasing the Debtors' assets. The process resulted in multiple parties interested in purchasing the Debtors' assets at a valuation in excess of the minimum price originally envisioned by the Debtors or their creditors. Although the key parties in interest originally expected that priority and general unsecured claims would receive no recovery and that the Debtors' secured noteholders would obtain a *de minimis* recovery, an auction process run by CRP

identified parties willing to compete over the Debtors' assets and led to the proposal of the Plan, which anticipates a 100% recovery to secured noteholders (plus pre-petition and post-petition interest), a 100% recovery to priority creditors and an estimated recovery to the general unsecured creditors of 50%.

(vii)   Application To Employ & Fee Applications

34.   This category reflects time incurred by CRP's professionals in preparing the retention application submitted on their behalf, for time incurred in the preparation and filing of five monthly fee notices during the Compensation Period for the months of August, September, October, November and December and for the time incurred in preparation of this fee application.

35.   As noted above, the foregoing descriptions of the services rendered by CRP on behalf of the Debtors during the Compensation Period are not intended to be exhaustive. Rather, the information provided above has been included to enable parties in interest to have a general understanding of the scope and extent of the services performed by CRP during the Compensation Period, and CRP respectfully requests such parties review the attached time records and supporting documentation for a complete recitation of the services performed by CRP on behalf of the Debtors and their creditors.

V.   **FACTORS TO BE CONSIDERED IN AWARDING PROFESSIONAL FEES**

36.   The factors to be considered in awarding professional fees have been enumerated in In re First Colonial Corporation of America, 544 F.2d 1291, 1298-99 (5th Cir.), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904 (1977), and have been adopted by most courts. CRP respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

(A)     The Time and Labor Required.  The professional services rendered by CRP on behalf of the Debtors have required the continuous expenditure of substantial time and effort, under significant time pressures.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

(B)     The Novelty and Difficulty of Questions.  In these cases, as in all others in which the Applicant is involved, CRP's creative approach has helped clarify and resolve a number of complex and novel issues.

(C)     The Skill Requisite to Perform Professional Services Properly.  CRP believes that its recognized expertise in the area of corporate reorganization, its ability to draw from its highly experienced professionals, and its creative approach to the resolution of issues has contributed to the success of the Debtors' reorganization efforts.

(D)     The Preclusion of Other Employment by Applicant Due to Acceptance of the Case.  These cases consumed a tremendous amount of professional time and CRP's work for the Debtors precluded its acceptance of additional engagements.

(E)     The Customary Fee.  CRP respectfully submits that the fees sought herein are reasonable given the magnitude and complexity of these chapter 11 cases and the time expended in attending to the representation of the Debtors, and is commensurate with the monthly fee CRP has been awarded in other cases in which a success fee was agreed to between the parties, as well as with monthly fees charged by other management consultants of comparable experience in cases in which a success fee was anticipated.

(F)     <u>Whether the Fee is Fixed or Contingent</u>.  Pursuant to sections 330

and 331 of the Bankruptcy Code, as well as the Administrative Fee Order, all fees

sought by formally retained professionals in these cases are contingent pending

final approval by this Court, and are subject to adjustment dependent upon the

services rendered and the results obtained.

(G)     <u>Time Limitations Imposed by Client or Other Circumstances</u>.  As

already indicated, CRP has attended to certain issues arising in these chapter 11

cases in compressed and urgent time periods.

(H)     <u>The Amount Involved and Results Obtained</u>.  CRP's active

participation in these cases have, as discussed, greatly contributed to the prospect

of a successful plan of reorganization and creditor recoveries far in excess of

those originally anticipated by parties in interest.

(I)     <u>The Experience, Reputation and Ability of the Professionals</u>.  CRP

has a sophisticated financial restructuring practice and is playing and has played a

major role in numerous cases of national import.  CRP's experience enables it to

perform the services described herein competently and expeditiously.

(J)     <u>The "Undesirability" of the Case</u>.  These cases are not undesirable.

(K)     <u>Nature and Length of Professional Relationship</u>.  CRP was retained

as of August 12, 2003.  The Court entered an order on October 9, 2003,

authorizing the Debtors to employ CRP, <u>nunc</u> <u>pro</u> <u>tunc</u> to August 12, 2003.  CRP

rendered services continuously to the Debtors between August 12, 2003 through

the balance of the Compensation Period, as necessary and appropriate.

## VI.    ALLOWANCE OF COMPENSATION

37.    The professional services rendered by CRP required a high degree of professional competence and expertise so that the numerous issues confronting the Debtors could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Debtors were performed efficiently, effectively and economically, and the results obtained have benefited not only the Debtors, but also the Debtors' estates and creditors.

38.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> Any professional person ... may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered ... as is provided under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application in the Administrative Fee Order.

39.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1) provides, in pertinent part, that the Court may award to a professional person:

> reasonable compensation for actual, necessary services rendered ...

40.    Section 330(a)(3)(A), in turn, provides that

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a

> reasonable amount of time commensurate with the
> complexity, importance, and nature of the problem, issue, or
> task addressed; and
> (E) whether the compensation is reasonable based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3)(A). The clear Congressional intent and policy expressed in this statute is to

provide for adequate compensation in order to continue to attract qualified and competent

professionals to serve in bankruptcy cases.

41.　　The total time spent by CRP professionals during the Compensation Period was

2,991.03 hours. The work involved and, thus, the time expended, was carefully assigned in light

of the experience and expertise required for a particular task.

42.　　As shown by this Application and supporting documents, CRP spent its time

economically and without unnecessary duplication of time. As noted above, attached hereto as

Exhibit "C" is a schedule of the hours expended by the professionals during the Compensation

Period and during the course of preparing this Application, their normal hourly rates, and the

value of their services.

43.　　CRP incurred actual out-of-pocket expenses in connection with the rendition of

professional services to the Debtors in the amount of $105,244.63 for which CRP respectfully

requests reimbursement in full. This amount reflects (i) a $2,457.86 downward billing

adjustment and (ii) a $1,260.00 administrative credit. [1] The disbursements and expenses have

been incurred in accordance with CRP's normal practice of charging clients for expenses clearly

related to and required by particular matters and at CRP's actual cost. CRP has endeavored to

minimize these expenses to the fullest extent possible. For example, CRP typically (i) booked

airfare in advance, on discount airlines and (ii) booked hotels at a corporate discount rate.

44.     As noted above, no agreement or understanding exists between CRP and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these chapter 11 cases.

45.     No prior application has been made in this Court or in any other court for the relief requested herein for the Compensation Period.

WHEREFORE, CRP respectfully requests that this Court enter an order:

(a)     approving the allowance of $1,038,111.00 for compensation for professional services rendered to the Debtors during the period from August 12, 2003 through and including December 19, 2003;

(b)     approving the allowance of $8,325.00 for compensation for the performance of professional services during the course of preparing this Application;

(c)     approving the reimbursement of CRP's out-of-pocket expenses incurred in connection with the rendering of such services during the period August 12, 2003 through and including December 19, 2003 in the amount of $105,244.63;

---

[1] One of the Debtors' independent contractors provided administrative support for CRP from time to time, for non-Debtor related tasks. The administrative assistant maintained records for the hours billed on behalf of CRP, totaling $1,260.00

(d)      authorizing and directing the Debtors to pay the fees and expenses awarded; and

(e)      granting such other and further relief as this Court may deem just and proper.

Dated:   January 16, 2004

Respectfully submitted,

**CRP, LLC**

By: */s/ T. Scott Avila*
     T. Scott Avila (Managing Partner)

CRP Services, LLC
13335 Noel Road, Suite 1825
Dallas, TX 75240
(972) 702-7333 (Telephone)
(972) 702-7334 (Facsimile)

Former Chief Restructuring Officer
for the Debtors and Debtors in Possession