David L. Neale (CA Bar No. 169978, NY Bar No. DN 1948)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
1801 Avenue of the Stars, Suite 1120
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Penthouse International, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                         :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
|      GENERAL MEDIA, INC., *et al.*, | : | Case No. 03-15078 (SMB) |
| | : | |
|      Debtors. | : | (Jointly Administered) |

------------------------------------------------------------x

## MOTION FOR RECONSIDERATION OF *"ORDER APPROVING UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020 CONFIRMING THE DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION"*

Penthouse International, Inc. ("PII"), by and through its counsel, Levene, Neale, Bender, Rankin & Brill L.L.P., hereby files its motion (the "Motion") to reconsider the "Order Approving Under 11 U.S.C. § 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming the Debtor's Fourth Amended Joint Plan of Reorganization" entered on August 16, 2004 (the "Order"), a true and correct copy of which is attached hereto as Exhibit "1." In support of its Motion, PII respectfully represents as follows:

### <u>Jurisdiction</u>

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105 of Title 11 of the United States Code, 11 U.S.C. §§ 101, <u>et seq.</u> (the "Bankruptcy Code") and Bankruptcy Rule 2004.

**Standing**

2.    PII is the owner of the common stock of the Debtors and, as such, has standing to raise the issues addressed herein pursuant to 11 U.S.C. § 1109(b).  Moreover, PII was the plan sponsor of the Third Amended Plan (as defined below) and has a material and substantial economic interest in the outcome of this matter.  If this Motion is granted, PII intends to request that the Debtors seek confirmation of their alternative plan of reorganization, described below. The Order which is the subject of this Motion deprives PII of the right to go forward with its efforts to confirm the Third Amended Plan.

**Background**

3.    General Media, Inc., and its direct and indirect subsidiaries, General Media Art Holding, Inc., General Media Communications, Inc., General Media Entertainment, Inc., General Media (UK) Ltd., GMCI Internet Operations, Inc., GMI On-Line Ventures, Ltd., Penthouse Images Acquisitions, Ltd., and Pure Entertainment Telecommunications, Inc. (collectively, the "Debtors") each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 12, 2003.  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors in possession.  On August 22, 2003, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

4.    On December 22, 2003, the Debtors filed their Joint Plan of Reorganization (the "Original Plan") and the disclosure statement relating thereto. Under the Original Plan, holders of the Debtors' Senior Notes that accepted such plan would have exchanged them for one million shares of common stock of Reorganized GMI, representing 100% of the new common equity, plus up to $27 million principal amount of new seven-year notes, while holders of General Unsecured Claims, which claims aggregate approximately $10-$12 million, would have shared

pro rata in $2 million in cash and $3 million principal amount of the new seven-year notes. Holders of Convenience Claims would have received the lesser of (a) $1,000 of the allowed amount of such claim or (b) 20% of the allowed amount of such claim. Under the Original Plan, all common stock and preferred stock interests would have been cancelled and holders of such interests would have received no distributions on account thereof. Under the Original Plan, majority control of the Reorganized Debtors would have been vested in PET and its affiliates, which together hold 89% of GMI's Senior Notes and PII, holder of 99.5% of GMI Common Stock, would have received no distributions on account of such stock.

5.      After a hearing held on January 21, 2004, the disclosure statement in support of the Original Plan, amended and dated as of January 21, 2004 (the "Disclosure Statement"), was approved by an Order of this Bankruptcy Court as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code (the "Disclosure Statement Approval Order"). As reflected by affidavits of service on file with the Court, on or before January 27, 2004, the Debtors mailed or caused to be mailed, by first class mail, to the parties set forth in the Disclosure Statement Approval Order the solicitation packages containing copies of: (1) the Disclosure Statement Approval Order; (2) the Notice of Disclosure Statement Approval and Confirmation Hearing on the Original Plan setting forth, among other things, (a) the voting deadline for the submission of ballots to accept or reject the Original Plan, (b) the time fixed for filing objections to confirmation of the Original Plan, and (c) the time, date and place of the confirmation hearing in connection with the Original Plan; (3) the approved form of the Disclosure Statement (together with the Original Plan annexed thereto as Exhibit "A"); and, where applicable, (4) a ballot or notice of non-voting status, to the appropriate parties.

6.      On March 10, 2004, the Debtors' notice agent, The Garden City Group, Inc., filed with the Bankruptcy Court the Declaration of Jeffrey S. Stein Regarding the Methodology for the

Tabulation of and Results of Voting With Respect to the Debtors' Joint Plan of Reorganization (the "GCG Declaration") attesting and certifying the method and results of the ballot tabulation for the Classes of Claims and Interests entitled to vote to accept or reject the Original Plan. As set forth in the GCG Declaration, the Original Plan was accepted by all classes entitled to vote.[1]

7.    On March 3, 2004, the adjourned date for the confirmation hearing in connection with the Original Plan, the Debtors filed their First Amended Joint Plan of Reorganization (the "First Amended Plan"), which replaced the Original Plan. The First Amended Plan provided that all holders of the Senior Notes would be paid in full with post-petition interest in cash on the Effective Date, and that all allowed General Unsecured Claims would be paid in full in cash (without interest) on the later of the Effective Date and the date such claims become allowed claims. Whereas under the Original Plan, GMI preferred stock interests would have been cancelled and its holders would have received no distribution, under the First Amended Plan the preferred stock would have been reinstated and thereby rendered unimpaired. Lastly, the common stock interests (99.5% of which are owned by PII) would have been cancelled and shares of new common stock representing 100% ownership of the Reorganized Debtors would have been issued and distributed to PII in exchange for a capital contribution by PII in an amount of not less than $38 million or such additional amount as would have been required, together with a proposed exit financing facility (in the maximum amount of $30 million), to fund the distributions contemplated by the First Amended Plan.

8.    On or about March 11, 2004, Pet Capital Partners LLC ("PET") filed its Majority Bondholder's Plan of Reorganization (the "PET Plan"), together with an accompanying

---

[1] PII never conducted any discovery of the PET Parties with respect to voting matters after the ballots were submitted. Since PII ultimately sponsored a plan of reorganization that contemplated full payment to creditors, voting on the PII-sponsored plan was rendered unnecessary. 11 U.S.C. § 1126(f). Issues concerning the voting by creditors was only made relevant by the PET Parties' insistence that the Debtors seek confirmation of the Fourth Amended Plan, since there are impaired classes of creditors under that Plan.

disclosure statement. However, on or about April 16, 2004, PET filed its Notice of Withdrawal of Majority Bondholder's Plan of Reorganization and Related Disclosure Statement. Acceptances of the PET Plan were never solicited or obtained. No discovery of the PET Parties was conducted by PII with respect to the PET Plan.

9. On April 21, 2004, the Debtors filed the Second Amended Plan, which provided for the payment in full, plus post-petition interest, of the Senior Note Claims and payment in full of General Unsecured Claims and Convenience Claims, without interest. Under the Second Amended Plan, the preferred stock interests would have been cancelled and the holders of such interests would have received no distributions on account thereof. Lastly, the common stock interests would have been cancelled, the holders thereof would have received no distributions on account of such interests, and new shares of common stock representing 100% ownership of the Reorganized Debtors would have been issued to PII in exchange for a capital contribution by PII in an amount of not less than $38 million or such additional amount as would have been required, together with an exit financing facility (in the maximum amount of $30 million), to fund the distributions contemplated by the Second Amended Plan. A revised commitment letter for the exit financing facility was annexed as an exhibit to the Debtors' Amended Plan Supplement, dated June 29, 2004. Exhibit A to that commitment letter replaced and superceded Schedule 6.5 of the Second Amended Plan.

10. Although Marc H. Bell ("Bell"), Daniel C. Staton ("Staton"), and PET (together with Bell and Staton, the "PET Parties") were contractually obligated to take no direct or indirect action to hinder confirmation of the Second Amended Plan, the PET Parties, or certain of them, commenced litigation against the individual ("Molina") who had committed to provide PII with the $38 million equity capital required to satisfy the cash requirements under the Second Amended Plan. By virtue of the PET Parties' conduct, Molina withdrew his commitment to

provide the equity capital required under the Second Amended Plan. Despite the PET Parties' bad faith conduct and breach of contract, PII immediately undertook to find a replacement equity participant to allow creditors to reap the benefits of the full payment provided under the Second Amended Plan.

11. On July 24, 2004, the Debtors filed their Third Amended Joint Plan of Reorganization dated as of July 23, 2004 (the "Third Amended Plan"), which replaced the Second Amended Plan. The terms of the Third Amended Plan were identical to the terms of the Second Amended Plan except that under the Third Amended Plan new common stock representing 100% ownership of the Reorganized Debtors would have been issued to GMI Holdings, LLC ("GMI Holdings"), instead of to PII. GMI Holdings was an entity formed by PII and Beate Uhse, AG ("Beate Uhse"). The issuance of such shares to GMI Holdings would have been in exchange for a capital contribution by GMI Holdings to the Reorganized Debtors in an amount required, together with a $22.5 million exit financing facility, to have funded the distributions contemplated by the Third Amended Plan. The Debtors' creditors would have received identical treatment under the Third Amended Plan as they would have received under the Second Amended Plan.

12. Literally hours before the adjourned hearing on confirmation of the Third Amended Plan was to take place, Beate Uhse advised PII and the Debtors that it was not prepared to proceed with confirmation of the Third Amended Plan. As a result, the Debtors requested, and obtained, a further adjournment of the hearing to consider confirmation of the Third Amended Plan through and including August 6, 2004. At the August 6, 2004 hearing, the Debtors requested and obtained a further adjournment of the hearing through and including

September 14, 2004.[2]   Under the terms of the PET Parties' debtor in possession financing arrangement with the Debtors, the Debtors' failure to confirm the Third Amended Plan gave the PET Parties the right to compel the Debtors to file a motion to sell the Debtors' assets pursuant to section 363 of the Bankruptcy Code.   PII did not oppose such a sale, and it was PII's understanding that the Debtors would timely file a motion to sell the Debtors' assets, and that a hearing with respect to that motion (or a sale procedures motion) was also to be held on September 14, 2004.

13.     In lieu of compelling the Debtors to proceed with the contemplated sale motion, the PET Parties demanded that the Debtors go forward and seek confirmation of an amended plan of reorganization based upon the terms of the PET Plan, subject to certain modifications. The PET Parties imposed an extremely short deadline upon the Debtors to propose and seek confirmation of a plan of reorganization satisfactory to the PET Parties.

14.     On August 12, 2004, the Debtors filed the Fourth Amended Plan[3], which replaced the Third Amended Plan, and a hearing on confirmation of the Fourth Amended Plan was scheduled for that same date.  Pursuant to the terms of the Fourth Amended Plan, inter alia, PII will receive no distributions on account of its stock and the PET Parties, or certain of them, are to acquire majority control of the reorganized debtors.  In addition, general unsecured creditors are to share pro rata in $2 million in cash and $11 million in principal amount of new notes (the

[2] PII has been working diligently to satisfy all of the requirements for confirmation of the Third Amended Plan at the continued hearing on September 14, 2004.  Unlike the Fourth Amended Plan, the Third Amended Plan proposes to pay all creditors in cash on the effective date.  PII has previously made all of the showings necessary to confirm the Third Amended Plan, other than the showing of feasibility under Section 1129(a)(11) of the Bankruptcy Code. PII submits that creditors should be afforded the opportunity to reap the benefits of a full payment plan, and that there is no harm to the PET Parties if the Order is reconsidered and a further hearing on confirmation of the Fourth Amended Plan is taken up on September 14, 2004.  At that hearing, the Court can determine (a) whether either the Third Amended Plan or the Fourth Amended Plan is feasible, and (b) which of the two plans is in the best interests of creditors and the estates.  See 11 U.S.C. § 1129(c).
[3] Although styled as the Debtor's Fourth Amended Plan, the Fourth Amended Plan was, in essence, simply a modified version of the PET Plan.  As such, PII attributes the defects in the Fourth Amended Plan and the materials offered in purported support of its confirmation to the PET Parties.  PII believes that the Debtors were compelled to proceed with confirmation of the Fourth Amended Plan under an artificial time pressure created by the PET Parties and improper coercion by the PET Parties of Robert Guccione ("Guccione").

"GMI Term Loan Notes") to be issued by the reorganized debtors. The GMI Term Loan Notes are to mature seven (7) years after issuance. See Fourth Amended Plan, Article V, § 5.2.

15.     On August 12, 2004, on less than 24 hours' prior notice to PII, the Court conducted a hearing to consider confirmation of the Fourth Amended Plan. At the time of the confirmation hearing, the Debtors presented certain limited evidence in support of confirmation of the Fourth Amended Plan. Prior to the August 12, 2004 hearing, neither PII nor any other party in interest was advised of the evidence to be offered by the Debtors in purported support of confirmation of the Fourth Amended Plan, nor given any opportunity to conduct discovery with respect to the matters relevant to the Court's consideration of the Fourth Amended Plan.[4] Among other things, the Debtors proffered evidence at the August 12, 2004 hearing concerning: (i) the interrelationship between and among the holders of the Debtors' senior notes and the tabulation of ballots for that class of claims under the Fourth Amended Plan; (ii) the qualifications of Bell and Staton to serve as the officers of the reorganized debtors, (iii) the feasibility of the Fourth Amended Plan, and (iv) the PET Parties' good faith. On August 16, 2004, the Court entered its Order which is the subject of this Motion.

16.     Following the hearing on confirmation of the Fourth Amended Plan, PII filed its ex parte motion for authority pursuant to Bankruptcy Rule 2004 to obtain documents and testimony from the PET Parties with respect to allegations made at the confirmation hearing.

---

[4] PII's principal bankruptcy attorney was on vacation during the week of August 9, 2004 and was not available to attend the hearing on August 12, 2004. Several requests were made to the Debtors and the PET Parties to adjourn the hearing until the week of August 16, 2004 (merely days after the hearing was in fact held) so that PII would be able to participate meaningfully in the hearing with respect to the confirmation of the Fourth Amended Plan, but all of PII's requests for the brief adjournment were rejected. As set forth in the accompanying Affidavit of Martin J. Brill, it was PII's counsel's understanding that a request to adjourn the hearing had been presented to the Court through a discussion among certain counsel and the Court's chambers, and that the Court had decided to proceed with the hearing on confirmation on August 12, 2004 notwithstanding that request. Counsel for PII was thus under the impression that PII's request for an adjournment of the hearing had already been considered and rejected by the Court and thus did not make any further request for an adjournment at the hearing on August 12, 2004.

The Court has set a status conference on PII's Rule 2004 motion on August 24, 2004 at 11:00 a.m.

17.     PII believes that, if permitted to obtain the discovery requested by way of its contemplated examinations of the PET Parties pursuant to Bankruptcy Rule 2004, PII will ascertain facts that it believes to be true concerning representations made by the PET Parties at the hearing on confirmation of the Fourth Amended Plan with respect to (i) the qualifications of Bell and Staton to serve as officers of the reorganized debtors; (ii) issues concerning the alleged good faith of the PET Parties in connection with the confirmation of the Fourth Amended Plan; and (iii) issues going to the feasibility of the Fourth Amended Plan.  Because of the extremely abbreviated notice provided to PII prior to the hearing to consider confirmation of the Fourth Amended Plan, and because of the unavailability of PII's bankruptcy counsel on the date set for such hearing, PII was not afforded an adequate opportunity to make its record in opposition to the confirmation of the Fourth Amended Plan, all as more fully discussed below.

### Relief Requested

18.     By way of this Motion and pursuant to Rules 59(e) and, to the extent applicable, 60(b) of the Federal Rules of Civil Procedure, PII seeks an order of this Court reconsidering the entry of the Order and vacating the Order to permit a continued hearing to consider confirmation of the Fourth Amended Plan.  PII submits that a further hearing to consider confirmation of the Fourth Amended Plan should be scheduled for September 14, 2004 at 10:00 a.m. (the same date as the adjourned hearing to consider confirmation of the PII-sponsored Third Amended Plan).  At the further hearing to consider confirmation of the Fourth Amended Plan, PII should be afforded the opportunity to present a comprehensive evidentiary showing concerning the defects in such plan, and requests that the Court reopen the record with respect to the Fourth Amended Plan for such purpose.

**Basis for Relief Requested**

19.     A bankruptcy court may, in the exercise of its equitable powers, enter an order setting aside a previous order.  Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 137 (1937).  Pursuant to FRCP 59, this Court is authorized to reconsider orders and judgments while FRCP 60 authorizes this Court to amend final orders and judgments.  Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b).  See also, School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993)("A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)").  In the even the Order is not deemed a "final order" or "judgment", Local Bankruptcy Rule 9023-1 provides, in relevant part, as follows:

> A motion for reargument of a court order determining a motion shall be served within 10 days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within 10 days after entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion. The motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered.  No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be re-argued orally.

See also, Family Golf Centers, Inc. v. Acushnet Company and Fortune Brands, Inc. (In re Randall's Island Family Golf Centers, Inc., 290 B.R. 55, 61 (Bankr. S.D. N.Y. 2003) (Fed. R. Civ. P. 59(e) only applies to judgments[5]; however, Local Bankruptcy Rule 9023-1(a) is not limited to final orders).

*Rule 59*

20.     FRCP 59 is incorporated into the Bankruptcy Code by Bankruptcy Rule 9023. Rule 59(a) provides that:

---

[5] "Judgments" as used in the Federal Rules of Civil Procedure includes any order from which an appeal lies.  FRCP 54(a).

> [a] new trial may be granted to all or any of the parties and on all
> or part of the issues (1) in an action in which there has been a trial
> by jury, for any of the reasons for which new trials have heretofore
> been granted in actions at law in the courts of the United States;
> and (2) in an action tried without a jury, for any of the reasons for
> which rehearings have heretofore been granted in suits in equity in
> the courts of the United States.

Granting a motion for a new trial under FRCP 59(a)(2) is appropriate if the moving party demonstrates (1) a manifest error of fact; (2) a manifest error of law; or (3) newly discovered evidence. See Baasch v. Reyer, 827 F.Supp. 940, 942-43 (E.D. N.Y. 1993), citing Brown v. Wright, 588 F.2d 708, 710 (9th Cir.1978); In re Best Payphones, Inc., 2003 WL 1089525 (Bankr. S.D.N.Y. 2003) ("'The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error to prevent manifest injustice.'"). Pursuant to FRCP 59(e), a motion to amend the judgment (often referred to as a "Motion for Reconsideration") is timely if filed within ten days of entry of the judgment. In re Best Payphones, Inc., supra ("…courts have generally held that regardless of the title, a motion filed within ten days of the entry of judgment is treated as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e)…").

21.     Rule 59 provides a means of relief in cases in which one party has been unfairly made the victim of surprise, but such surprise must be inconsistent with substantial justice in order to justify grant of a new trial. Conway v. Chemical Leaman Tank Lines, Inc., 687 F.2d 108 (5th Cir. Tex. 1982) ("It is well settled that Rule 59 provides a means of relief in cases in which a party has been unfairly made the victim of surprise"), *rehearing denied* 693 F.2d 133. As set forth herein, with the last minute filing of the Fourth Amended Plan, PII was unfairly made the victim of surprise as it was not afforded time to review evidence or investigate evidence allegedly supporting confirming of the Fourth Amended Plan, and PII was deprived of access to its bankruptcy counsel despite its request that the hearing be adjourned for a mere three

<u>days</u>!

22.      Pursuant to Rule 59, courts "have inherent authority … to set aside verdicts in order to prevent a miscarriage of justice." <u>Allred v. Maersk Line, Ltd.</u>, 826 F.Supp. 965, 969 (E.D. Va. 1993), <u>affirmed in part</u>, <u>reversed in part</u> 35 F.3d 139. In <u>Allred</u>, the court noted that:

> Though the underlying basis for a new trial is always "to prevent injustice," there are a number of specific injustices which courts may find in support of granting a Rule 59 motion. These include prejudicial error of law on the part of the court, a verdict which is against the weight of the evidence, damages awarded which are either too large or too small, or some palpable misconduct which has prejudicially affected the jury.

<u>Id.</u>

### *Rule 60(b)*

23.      Under Rule 60(b) of the Federal Rules of Civil Procedure, courts may vacate or set aside final orders for a number of reasons.[6] <u>In re F.A. Potts & Co., Inc.</u>, 86 B.R. 853, 856 (Bankr. E.D. Pa. 1988), <u>citing</u> <u>Wayne United Gas Co. v. Owens-Illinois Glass Co.</u>, 300 U.S. 131, 137 (1937). Specifically, Rule 60(b) provides that:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

---

[6] This Court has previously held that Rule 60(b) permits a court to modify a confirmation order. <u>In re Rickel & Assocs., Inc.</u>, 260 B.R. 673, 678 (Bankr. S.D.N.Y. 2001). PII recognizes that this Court has previously held that Rule 60(b) is inapplicable to non-final orders or judgments. <u>In re Best Payphones, Inc.</u>, <u>supra</u>, and, in <u>dicta</u>, that the use of Rule 60(b) has been limited to "situations that involve a court's attempt to correct its own mistake in issuing the … confirmation order." <u>In re Magundayao</u>, 2004 WL 1812665 (Bankr. S.D.N.Y. 2004) (considering motion to vacate discharge order in Chapter 7 case). This Court has also held, however, that a court may reconsider interlocutory orders "pursuant to its inherent authority." <u>Id.</u>, <i>citing</i> <u>United States v. LoRusso</u>, 695 F.2d 45, 53 (2d Cir. 1982), <i>cert den.</i>, 460 U.S. 1070 (1983).

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b).  See also, In re Potts, 86 B.R. at 857(the many subsections of this rule provide a broad spectrum of scenarios in which bankruptcy judges can vacate prior orders).

24.    Rule 60(b)(6) allows the liberal exercise of the power to vacate an order.  "This power can be exercised when needed to 'accomplish justice,' and provides a 'reservoir of equitable power.'"  In re F.A. Potts & Co., Inc., 86 B.R. 853, 857 (Bankr. E.D. Penn. 1988), citing Commonwealth v. Durkalec (In re Durkalec), 21 B.R. 618, 619 (Bankr. E.D. Pa. 1982)(Rule 60(b) applicable whenever necessary to accomplish justice).  However, to justify relief under Rule 60(b)(6), a party must show 'extraordinary circumstances' suggesting the party is faultless, i.e., that circumstances beyond the moving party's control prevented it from taking timely action to protect its interests.  See, Pioneer Investment Servc. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 392 (1993).

25.    Under similar circumstances, the court in In re Rideout, 86 B.R. 523 (Bankr. N.D. Ohio 1988) granted a creditor's motion to vacate a confirmation order pursuant to Rule 60(b) and Section 105(a) of the Bankruptcy Code for, among other reasons, the lack of appropriate notice of the confirmation hearing to the objecting creditor.  Although the court in Rideout relied upon the provisions of Rule 60(b)(4), supra, the court nonetheless drew a distinction between the relief

available under Rule 60(b) and the relief available under Section 1144 of the Bankruptcy Code.[7] Specifically, the court found that Section 1144 provided an opportunity to obtain permanent revocation of a plan because of fraud; in contrast, Rule 60(b) would result only in the confirmation hearing being reset, with the court ensuring that the creditors be afforded adequate notice of that hearing.  86 B.R. at 530.  PII seeks the same relief.

*Timeliness*

26.     Rule 59(e) of the Federal Rules of Civil Procedure ("FRCP"), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9023, requires that all motions to alter or amend a judgment be filed no later than ten days after entry of the judgment.  FRCP 60, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9024, requires motions to be made in a reasonable time.  As the Order was entered on August 16, 2004, this motion is timely filed under either rule.

27.     Furthermore, because this Motion is filed within ten days of the entry of the Order, the time for any party to appeal from the Order will not begin to run until the entry of the order disposing of this Motion.  See, Fed. R. Bankr. P. 8002(b).

*Notice of the Hearing on the Fourth Amended Plan Was Not Adequate*

28.     Confirmation of a plan of reorganization in a Chapter 11 bankruptcy case is perhaps the single most important event throughout the course of a case as it affects each of the debtor's creditors and equity holders.  The purpose of the confirmation hearing is to determine whether or not a plan proponent can establish each of the requirements necessary for confirmation.  In re Featherworks Corp., 25 B.R. 634, 642 (Bankr. E.D. N.Y. 1982) (proponent has burden of demonstrating that the plan complies with the Bankruptcy Code).  Any pre-confirmation modification of a plan after the approval of its disclosure statement will bar

---

[7] Section 1144 permits a court, upon request of a party made within 180 days following the entry of an order of confirmation, to revoke such an order if such order was procured by fraud.  11 U.S.C. § 1144.

confirmation if interested parties have not received adequate information of the modifications. See, 11 U.S.C. § 1129(a)(2); In re Concrete Designers, Inc., 172 B.R. 354, 358 (Bankr. S.D. Ohio 1994).

29.    Unlike the Third Amended Plan that proposes to pay all creditors in full in cash, the Fourth Amended Plan provides that creditors will receive a combination of cash and the GMI Long Term Notes.  Confirmation of the Third Amended Plan was supported by all parties, including, without limitation, the PET Parties; in contrast, PII, the sponsor of the Third Amended Plan, an equity holder and interested party, opposed confirmation of the Fourth Amended Plan, yet was given inadequate notice to prepare and file its objection to confirmation, in violation of, among other things, Rules 2002(b), 2002(d), 3020(b)(1) and 9014 of the Federal Rules of Bankruptcy Procedure and Section 1128 and 1129 of the Bankruptcy Code.

30.    The Order states that "[n]o objections to confirmation of the … Fourth Amended Plan were filed," Order, p. 7, but ignores the fact that the Fourth Amended Plan was confirmed on less than 24 hours' prior notice.[8]  In addition, the Order contains the finding that "The Notice of Confirmation Hearing in connection with the Second Amended Plan shall be deemed to have been served in compliance with the Scheduling Order and the Bankruptcy Rules and such service was adequate and sufficient.  No other or further notice of the Fourth Amended Plan is necessary." Order, p. 9, ¶ (D).

31.    Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  11 U.S.C. § 1128(a).  One commentator has

---

[8] Although formal, written objections to confirmation of the Fourth Amended Plan could not be filed by virtue of the extremely limited notice of the confirmation hearing, an objection to confirmation was made at the hearing by Robert S. Wolf, Esq. of Gersten, Savage, Kaplowitz, Wolf & Marcus, LLP.  As reflected in the transcript of the hearing before this Court on August 12, 2004, indicated that he represented both Molina and PII "because they stand side by side."  Transcript of Confirmation Hearing before the Honorable Stuart M. Bernstein, August 12, 2004, p. 83, lines 16-18.  PII has separately submitted a copy of the official transcript of the confirmation hearing (the "Transcript").  As set forth in the Affidavit of Martin J. Brill filed contemporaneously herewith, it was PII's counsel's understanding that Mr. Wolf's arguments were being offered on behalf of both Molina and PII.

opined that, under Section 1128(a), "it seems clear that actual formal notice is required, as opposed to the more liberal notice that may be permitted under the standard of 'after notice and a hearing' in section 102." 7 *Collier's on Bankruptcy* ¶ 118.02 at 1128-2 (15th Ed. Rev. 2004); *citing* Reliable Elec. Co. v. Olson Constr. Co., 726 F.2d 620, 622 (10th Cir. 1984) ('"… an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'". Since creditor was not afforded opportunity to comment on reorganization plan, it was "denied due process of law.").

32. The Supreme Court has held that to comport with the requirements of due process, notice must "apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 14 (1978)(footnote omitted); see also, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The Bankruptcy Rules have many mechanisms to force plan proponents to comply with procedural due process. See e.g., Fed. R. Bankr. P. 3017(a)(25 day notice to debtor, creditors, equity security holders and other parties in interest to consider the disclosure statement and any objections or modifications thereto); Fed. R. Bankr. P. 3017(c)("on or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan"); Fed. R. Bankr. P. 3017(d)(upon approval of disclosure statement, the plan, disclosure statement, and time for filing acceptances and rejections of plan must be mailed to all creditors and equity security holders); Fed. R. Bankr. P. 3019(court may only deem creditors and equity holders to have accepted a modification if the proposed modification does not adversely change the treatment of the claim of any creditor or the interest

of any equity security holder); Fed. R. Bankr. P. 3020(b)("[t]he court shall rule on confirmation of the plan after notice and hearing as provided as provided in Rule 2002").

33.     In this case, PII has been the victim of unfair surprise and could not have taken any additional action to protect its interests. Under the facts of this case, the notice afforded PII of the hearing on confirmation of the Fourth Amended Plan was wholly insufficient, and relief from the Order is particularly appropriate under the circumstances. PII specifically requested that the confirmation hearing be adjourned for, at most, a few days so that PII's principal bankruptcy counsel (who was out of the office and wholly unreachable during the week of August 9, 2004) could review the Fourth Amended Plan and prepare a complete objection thereto. See Affidavit of Martin J. Brill filed herewith. Without explanation as to the alleged harm from a two or three day adjournment of the hearing on confirmation of the Fourth Amended Plan, the PET Parties insisted that the Debtors proceed to seek confirmation of the Fourth Amended Plan on August 12, 2004, and deprived PII of a reasonable opportunity to present its objections thereto. It is PII's belief that this strong-arm tactic by the PET Parties was intended to achieve the exact result accomplished – namely, to preclude any party, including, without limitation, PII, from having a realistic opportunity to object to confirmation of the Fourth Amended Plan.[9]

*Issues With Respect to Confirmation Requirements Under 11 U.S.C. § 1129*

34.     "11 U.S.C. § 1129(a)(1) provides that a court may only confirm a plan where '[t]he plan complies with the applicable provisions of this title.'" Acequia, Inc. v. Clinton (In re Acequia, Inc.), 787 F.2d 1352, 1360 (9th Cir. 1986), citing In re Toy & Sports Warehouse, Inc.,

---

[9] Obviously, since the Fourth Amended Plan was filed only hours before the hearing to consider confirmation of that plan, neither PII nor any other party in interest was able to conduct discovery with respect to the facts relevant to consideration of confirmation of that plan. Moreover, PII was unaware of the evidence to be offered by the Debtors in support of confirmation of the Fourth Amended Plan until hours before the hearing. This "confirmation by ambush" cannot satisfy the requirements of the Bankruptcy Rules and Section 1128(a).

37 B.R. 141, 149 (Bankr. S.D. N.Y. 1984). The purpose of the confirmation hearing is to determine whether the plan proponent can establish each of the requirements for confirmation. The plan proponent bears the burdens of both introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied. Acequia, 787 F.2d at 1358; In re Featherworks Corp., 25 B.R. 634, 642 (Bankr. E.D. N.Y. 1982) (proponent has burden of demonstrating that the plan complies with the Code), *aff'd*, 36 B.R. 460 (E.D. N.Y. 1984). A plan proponent bears the burden of proof by a preponderance of the evidence. In re Cellular Info. Sys., Inc., 171 B.R. 926 (Bankr. S.D. N.Y. 1994); In re Washington Assocs., 147 B.R. 827 (Bankr. E.D. N.Y. 1992). Here, there were gaps in the evidence and legal arguments presented to the Court that resulted in mistakes of fact and/or law with respect to the Order.

### *11 U.S.C. § 1129(a)(1)*

35.    Section 1129(a)(1) of the Code provides that a court may confirm a plan of reorganization only if "the plan complies with the applicable provisions of this title." The phrase "applicable provisions" has been interpreted to mean, among other provisions, Section 1123 of the Code, which govern the classification of claims and interests and the contents of a plan of reorganization. In re Texaco, Inc., 84 B.R. 893, 910 (Bankr. S.D.N.Y. 1988); Kane v. Johns-Manville Corp., 843 F.2d 636, 648-9 (2nd Cir. 1988); H.R. Rep. No. 95-595, 9th Cong., 1st Sess. 412 (1977); S. Rep. No. 95-989, 95th Cong., 1st Sess. 126 (1978).

36.    Section 1123(a)(5)(J) requires that, in satisfaction of a debtor's obligation to provide "adequate means for the plan's implementation," a debtor may issue "securities of the debtor … for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose." 11 U.S.C. § 1123(a)(5)(J). In this case, the Fourth Amended Plan provides, among other things, for the issuance and distribution to creditors of the GMI Long Term Notes.

37.     According to the Disclosure Statement, upon which the Debtors have relied in conjunction with confirmation of the Fourth Amended Plan, one of the conditions precedent to the effectiveness of the Fourth Amended Plan is that the GMI Long Term Notes be exempt from registration under applicable securities laws pursuant to Section 1145 of the Bankruptcy Code. Disclosure Statement, p. 42.  Likewise, the Fourth Amended Plan incorporates this condition precedent to the effectiveness of that plan.  Fourth Amended Plan, p. 24, Article X, § 10.1.[10]

38.     Since the GMI Long Term Notes mature seven (7) years after their issuance, such notes may not be exempt from registration requirements under applicable securities laws pursuant to Section 1145(d) of the Bankruptcy Code.  That section makes the Trust Indenture Act of 1939 inapplicable to notes issued under a plan, <u>if such notes mature not later than one year after the effective date of such plan</u>.  11 U.S.C. § 1145(d).

39.     Since the GMI Long Term Notes, on their face, do not fall within the exemption from registration under Section 1145 of the Bankruptcy Code, the PET Parties should have been required to demonstrate how this critical condition to the effectiveness of the Fourth Amended Plan was otherwise to be satisfied.  Absent such a showing, the evidence regarding the feasibility of the Fourth Amended Plan was deficient, and there is no finding by the Court in the Order that the GMI Long Term Notes are securities that are exempt from the registration requirements imposed by the Trust Indenture Act of 1939.[11]  In view of this deficiency, the Order should be vacated and the parties offered an opportunity to consider these issues.

---

[10] This section requires as a condition precedent to the effectiveness of the Fourth Amended Plan that the "New Securities to be issued to holders of Claims pursuant to the Plan are exempt from registration pursuant to Section 1145 of the Bankruptcy Code."  Fourth Amended Plan, p. 24, Article X, § 10.1(i).  "New Securities" includes the GMI Long Term Notes under the Fourth Amended Plan.  Fourth Amended Plan, p. 23, Article VIII, § 8.5.

[11] Given the limited time available to PII to prepare this Motion, it is not clear what impact the Trust Indenture Act of 1939 would have on the GMI Long Term Notes.  If such notes require registration, at a minimum, creditors should have been apprised of this requirement (and the risk that the Securities and Exchange Commission would have issues concerning any proposed registration) and provided information concerning the cost and delay associated with registration of these securities.  Since there was no amended disclosure statement prepared or sent to creditors, creditors were unaware that this issue even existed with respect to the Fourth Amended Plan.

*11 U.S.C. § 1129(a)(2)*

40.     Section 1129(a)(2) requires that the plan proponent have complied with the "applicable" provisions of title 11.  Where section 1129(a)(1) focuses on the form and the content of the actual plan, section 1129(a)(2) focuses on the activities of the plan proponent.  The legislative history of this section indicates that Congress was primarily concerned "that the proponent of the plan comply with the applicable provisions of title 11, such as section 1125 regarding disclosure."  See H.R. Rep. No. 95-595, at 412 (1977); S.Rep. No. 95-989, at 126 (1978).

41.     Courts have readily accepted this, and have focused on compliance by the plan proponent with the disclosure and solicitation requirements of sections 1125 and 1126.  In re Cajun Elec. Power Coop., Inc., 150 F.3d 503 n.3 (5th Cir. 1998), *cert. denied sub nom* Mabey v. Southwestern Elec. Power Co., 526 U.S. 1144 (1999)(presumption that section 1129(a)(2) can be used to raise questions regarding compliance with section 1125); Colorado Mountain Express v. Aspen Limousine Servs. (In re Aspen Limousine Servs., Inc.), 193 B.R. 325 (D. Colo. 1996) (allegations of undisclosed side deal between plan proponent and employees); In re Drexel Burnham Lambert Group, 138 B.R. 723, 759 (Bankr. S.D. N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D. N.Y. 1987), *aff'd sub nom*, Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988); In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 149 (Bankr. S.D. N.Y. 1984).  Indeed, when there has been pre-confirmation modification of a plan after the approval of its disclosure statement, section 1129(a)(2) will bar confirmation if interested parties have not received adequate information of the modifications.  In re Concrete Designers, Inc., 173 B.R. 354, 358 (Bankr. S.D. Ohio 1994).

42.     In this case, the Debtors relied upon the Disclosure Statement that was more than six (6) months out of date in support of their contention that the disclosure requirements of

Section 1125 of the Bankruptcy Code were satisfied. The Court itself expressed concern regarding the adequacy of the disclosure provided to creditors.[12] PII has now sought authority to examine the PET Parties pursuant to Bankruptcy Rule 2004 in order to get the information that should have been provided to creditors in advance of the confirmation hearing, but, by virtue of the pressure put upon the Debtors and others by the PET Parties, was never presented.

*11 U.S.C. § 1129(a)(3)*

43.     Section 1129(a)(3) requires that a plan be "proposed in good faith," and that the plan not have been proposed "by any means forbidden by law." See, Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988) ("The good-faith test means that the plan was proposed with "honesty and good intentions" and with "a basis for expecting that a reorganization can be effected."), quoting Koelbl v. Glessing (In re Glessing), 751 F.2d 137, 139 (2d Cir. 1984), quoting Manati Sugar Co. v. Mock, 75 F.2d 284, 285 (2d Cir. 1935).

44.     "Section 1129(a)(3) and its inquiry into good faith goes to the core of the reorganization process. Although a bankruptcy judge can make a finding of good faith in the absence of an objection of taking evidence on that issue, it makes little sense to limit the ability of creditors, unimpaired or otherwise, to object on good faith grounds. Since all creditors will be affected by the plan, unimpaired creditors certainly are affected by confirmation, and thus are not intermeddling in dealings between the proponent and other creditors. Thus, creditors who are

---

[12] At the hearing to consider confirmation of the Fourth Amended Plan, in response to Debtors' counsel's comments regarding the qualification of Bell and Staton to serve as officers of the reorganized debtors, the Court inquired, "If you think this was important enough to bring it to my attention, don't you think it should have been put in the disclosure statement and sent out to creditors?" Transcript, p. 26, lines 12-16. Later, the Court asked Debtors' counsel, "You are the proponent of the plan and you are telling me you don't trust the people who are going to take [the reorganized debtors] over?" Transcript, p. 26. In response to the Court's inquiry about the need for additional disclosure, Debtors' counsel identified the quintessential "rock" and "hard place" the Debtors found themselves in: "We don't want to see a fire sale and unbridled litigation against Mr. Bell, PII has not produced adequate protection [sic]. We want you to do this plan. Now the Debtor had a solicited plan teed up for confirmation. We are the only parties that can go immediately to confirmation. Anyone else would need to have a disclosure statement, a confirmation hearing, a 60 to 90-day process. *We were the vehicle to do this instantly and we were told to do it instantly or we would be threatened with the appointment of a trustee. So we did it.*" Transcript, p. 27-28. Pressure from the PET Parties under the threat of calamitous alternatives is not a substitute for adequate disclosure pursuant to Section 1125 of the Bankruptcy Code.

unimpaired, as well as those who are impaired, should be able to object to a plan on good faith grounds, although what little authority exists seems to be contrary." *Colliers on Bankruptcy* § 1129.03[3][a][iii][C].

45.    In their rush to get their Fourth Amended Plan confirmed, the PET Parties were willing to threaten and coerce, and manipulate facts to suit their purposes.  As set forth in the Affidavit of Robert Guccione filed contemporaneously herewith, Guccione, the Chairman and Chief Executive Officer of the Debtors, was threatened by Bell with financial harm in the event the Fourth Amended Plan was not confirmed.  In addition, Bell communicated threats against Debtors' counsel if there was resistance to the PET Parties' Fourth Amended Plan.  See Affidavit of Robert C. Guccione, ¶¶ 3-8.  This affidavit (which was not filed prior to the confirmation hearing) directly contradicts the testimony of Bell at the hearing and goes to Bell's credibility as a witness.

46.    At the confirmation hearing, the Court also obtained testimony concerning the previously undisclosed purported "sale" by Bell of his interests in the Debtors' senior notes to friends, family members and even his counsel.  Transcript, pp. 51-52.  These sales were allegedly made by Bell in order to give his cronies a "rooting interest" in the outcome of these bankruptcy cases.  Id.  There was no evidence produced to establish that these sales occurred.  PII believes that these alleged note "sales" were manufactured by the PET Parties in order to obtain the acceptance of Class 2A creditors under the Fourth Amended Plan.  Specifically, there was one vote in Class 2A against confirmation of the Plan (cast by Beate Uhse); according to the PET Parties, there were 24 votes cast in favor of confirmation in Class 2A.[13]  PII has, through its

---

[13] Twenty one of these 24 ballots were cast by acknowledged cronies of Bell, each of whom allegedly held claims of $1,000.  The other two ballots were cast by Absolute Return Fund and Absolute Return Fund Europe, allegedly pursuant to some form of power of attorney in favor of Bell.  These powers of attorney were never produced by Bell at the confirmation hearing (despite Debtors' counsel's request).  PII has sought an examination of Bell with respect to his connections to the Absolute Return Funds pursuant to Bankruptcy Rule 2004, and reserves its rights under Section 1144 of the Bankruptcy Code to seek revocation of confirmation of  the Fourth Amended Plan if the

requested Rule 2004 examination of the PET Parties, sought information concerning these alleged note sales, and believes that it will uncover evidence to show that all 24 votes cast in Class 2A to accept the Fourth Amended Plan were votes of individuals and entities owned, controlled or directed by Bell or others closely related to him. This vote manipulation by the PET Parties contradicts any finding of "good faith" by them in connection with the Fourth Amended Plan.[14]

*11 U.S.C. § 1129(a)(5)*

47.     "Section 1129(a)(5) requires a host of disclosures and approvals with regard to the post-confirmation management of the revested debtor. This is appropriate; often prepetition management bears some of the responsibility for the debtor's filing, and creditors and equity security holders are entitled to know that history will not necessarily repeat itself." *Collier on Bankruptcy* § 1129.03[5] (15th Ed. Rev. 2004). Section 1129(a)(5)(A)(ii) of the Code requires that the appointment to, or continuance of a director, officer or voting trustee be "consistent with the best interests of creditors and equity holders and with public policy." In re Produce Hawaii, Inc., 41 B.R. 301, 304 (Bankr. D. Hawaii 1984); In re Parks Lumber Co., Inc., 19 B.R. 285, 291 (Bankr. W.D. La. 1982). Pursuant to 11 U.S.C. § 1129(a)(5)(A)(i), a plan proponent is required to disclose two attributes of post confirmation management: their identity and their affiliations.

48.     In the Fourth Amended Plan Supplement filed by the Debtors, the only officers of the reorganized debtors are listed as Bell and Staton. See Fourth Amended Plan Supplement, Exhibit "3." Although their identities are listed, there is no disclosure concerning their

---

evidence is sufficient to demonstrate that confirmation of the Fourth Amended Plan was procured by fraud by the PET Parties.

[14] Had PII been able to obtain discovery in advance of the confirmation hearing, PII could have also sought to designate the votes of these Bell-related individuals and entities as having been cast in bad faith pursuant to Section 1126(e) of the Bankruptcy Code. Had PII been afforded that opportunity, it is likely that Class 2A would have been deemed to reject the Fourth Amended Plan, and it is unclear that the Plan could have been crammed down on Class 2A pursuant to Section 1129(b) of the Bankruptcy Code.

qualifications or affiliations.[15]  PII should have had a reasonable opportunity to investigate the backgrounds of Bell and Staton to afford the Court an evidentiary basis upon which to make the requisite finding under Section 1129(a)(5).[16]

### *11 U.S.C. § 1129(a)(11)*

49.    Section 1129(a)(11) of the Bankruptcy Code provides that a court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  In order to meet this feasibility standard, a debtor must demonstrate that the plan has a "reasonable probability of success."  In re Acequia, Inc., 787 F.2d 1352, 1364 (9th Cir.1986); In re Pike's Peak Water Co., 779 F.2d 1456, 1460 (10th Cir. 1985); In re Apex Oil Co., 118 B.R. 683, 708 (Bankr. E.D. Mo. 1990).

50.    In this case, the Debtors served the Declaration of Cory Hill in Support of Confirmation of Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Hill Declaration") only hours before the hearing on confirmation of the Fourth Amended Plan.  Neither PII nor any other party in interest had a reasonable opportunity to evaluate the reasonableness of the assumptions or projections offered in the Hill Declaration or conduct an examination of Mr. Hill in advance of the confirmation hearing.  Mr. Hill's

---

[15] According to the Disclosure Statement, the identities and qualifications of post-confirmation management were to be filed with the Bankruptcy Court five (5) business days before the date set for filing objections to confirmation of the Plan.  Disclosure Statement, p. 55.  Obviously, that did not occur since creditors and parties in interest were given no opportunity to file any objections to confirmation of the Fourth Amended Plan and did not learn the identities of the Debtors' proposed post-confirmation management until the day of the confirmation hearing.  At the confirmation hearing, counsel for the Debtors specifically stated that he would not "stand here … and vouch for Mr. Bell."  Transcript, p. 86.  The purported plan proponents were, themselves, uncomfortable representing to the Court that Mr. Bell's appointment as an officer of the reorganized debtors was in the best interests of creditors and consistent with the public interest.

[16] PII was admittedly afforded the opportunity to conduct cross-examination of Bell at the confirmation hearing. However, having been able to complete no discovery prior to such cross-examination, PII's ability to question Bell at the confirmation hearing was extremely limited.  The PET Parties' surprise tactics were quite effective at eliminating any chance for a real evidentiary hearing on the Fourth Amended Plan.

qualifications are not set forth in the Hill Declaration, and there was no evidence offered concerning his ability to substantiate the projections that accompany his declaration.

51.     The issues identified herein that, in PII's view, warrant reconsideration or alteration of the Order are by no means exclusive.  The simple fact is that PII was not afforded the opportunity to conduct discovery to determine what all of the bases to object to confirmation of the Fourth Amended Plan were.  These limitations placed upon PII were created by the PET Parties' unreasonable insistence upon the expedited confirmation of the Fourth Amended Plan. There was no testimony at the confirmation hearing concerning the need for such an expedited hearing, and the PET Parties have never been called upon to justify, under oath, why the hearing on the Fourth Amended Plan had to be held within such an abbreviated and insufficient time frame.   Absent an order granting this Motion, the PET Parties will be rewarded for their inappropriate tactics and abuse of the bankruptcy process.

### No Prior Request

52.     No previous application for the relief requested herein has been made by PII to this or any other court.

WHEREFORE, PII respectfully requests that the Court enter an order (i) vacating the Order pursuant to FRCP 59(e) and/or 60(b); (ii) alternatively, requiring a further evidentiary hearing with respect to the standards for confirmation of the Fourth Amended Plan, with such hearing to be held on September 14, 2004 at 10:00 a.m., and affording PII and other interested parties the opportunity to conduct discovery of the PET Parties prior to such hearing; and

(iii) granting such other and further relief as is just and proper.

Dated: Los Angeles, California
      August 24, 2004

/s/ *David L. Neale*
————————————————————
David L. Neale (CA Bar No. 141225, NY Bar No.
    DN 1948)
LEVENE, NEALE, BENDER, RANKIN
    & BRILL L.L.P.
1801 Avenue of the Stars, Suite 1120
Los Angeles, CA 90067
Telephone:    (310) 229-1234
Facsimile:    (310) 229-1244
Email:    dln@lnbrb.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| GENERAL MEDIA, INC., *et al.*, | ) | Case No. 03-15078 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020
CONFIRMING THE DEBTORS' FOURTH AMENDED JOINT
<u>PLAN OF REORGANIZATION</u>**


PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.
Robert J. Feinstein (RF 2836)
Maria A. Bove (MB 8687)
780 Third Avenue, 36th Floor
New York, New York 10017-6234
Telephone: (212) 561-7700
Facsimile:  (212) 561-7777

Attorneys for Debtors and Debtors in Possession




Dated:  August 13, 2004

## INTRODUCTION

General Media, Inc., and its direct and indirect subsidiaries, General Media Art Holding, Inc., General Media Communications, Inc., General Media Entertainment, Inc., General Media (UK) Ltd., GMCI Internet Operations, Inc., GMI On-Line Ventures, Ltd., Penthouse Images Acquisitions, Ltd. and Pure Entertainment Telecommunications, Inc., as debtors and debtors in possession in the above-captioned chapter 11 cases ("GMI," the "Company," or the "Debtors"), have proposed the Debtors' Fourth Amended Joint Plan of Reorganization dated as of August 12, 2004 (the "Fourth Amended Plan").[1]

On August 12, 2003 (the "Commencement Date"), the Debtors each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors in possession. On August 22, 2003 the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").

## DISCLOSURE STATEMENT AND SOLICITATION OF THE ORIGINAL PLAN

On December 22, 2003, the Debtors filed their Joint Plan of Reorganization (the "Original Plan") and the disclosure statement relating thereto. Under the Original Plan, holders of the Debtors' Senior Notes that accepted such plan would have exchanged them for one million shares of common stock of Reorganized GMI, representing 100% of the new common equity, plus up to $27 million principal amount of new seven-year notes, while holders of General Unsecured Claims, which claims aggregate approximately $10-$12 million, would have shared pro rata in $2 million in cash and $3 million principal amount of the new seven-year notes.

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Fourth Amended Plan. Any capitalized term not defined in the Fourth Amended Plan, the Disclosure Statement or this Confirmation Order, but used in title 11 of the United States Code, as amended (the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

Holders of Convenience Claims would have received the lesser of (a) $1,000 of the allowed amount of such claim or (b) 20% of the allowed amount of such claim. Under the Original Plan, all common stock and preferred stock interests would have been cancelled and holders of such interests would have received no distributions on account thereof. Under the Original Plan, majority control of the Reorganized Debtors would have been vested in PET Capital Partners LLC ("PET Capital") and its affiliates, which together hold 89% of GMI's Senior Notes and Penthouse International, Inc. ("PII"), holder of 99.5% of GMI Common Stock, would have received no distributions on account of such stock.

After a hearing held on January 21, 2004, the disclosure statement in support of the Original Plan, amended and dated as of January 21, 2004 (the "Disclosure Statement"), was approved by an Order of this Bankruptcy Court as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code (the "Disclosure Statement Approval Order"). As reflected by affidavits of service on file with the Court, on or before January 27, 2004, the Debtors mailed or caused to be mailed, by first class mail, to the parties set forth in the Disclosure Statement Approval Order the solicitation packages containing copies of: (1) the Disclosure Statement Approval Order; (2) the Notice of Disclosure Statement Approval and Confirmation Hearing on the Original Plan setting forth, among other things, (a) the voting deadline for the submission of ballots to accept or reject the Original Plan, (b) the time fixed for filing objections to confirmation of the Original Plan, and (c) the time, date and place of the confirmation hearing in connection with the Original Plan; (3) the approved form of the Disclosure Statement (together with the Original Plan annexed thereto as Exhibit "A"); and, where applicable, (4) a ballot or notice of non-voting status, to the appropriate parties.

On March 10, 2004, the Debtors' notice agent, The Garden City Group, Inc., filed with the Bankruptcy Court the Declaration of Jeffrey S. Stein Regarding the Methodology for the Tabulation of and Results of Voting With Respect to the Debtors' Joint Plan of Reorganization (the "GCG Declaration") attesting and certifying the method and results of the ballot tabulation

for the Classes of Claims and Interests entitled to vote to accept or reject the Original Plan. As set forth in the GCG Declaration, the Original Plan was accepted by all classes entitled to vote as set forth below:

| CLASS | ACCEPTED AMOUNT | ACCEPTED NUMBER |
|---|---|---|
| Class 2A (Senior Note Claims) | 87.13% ($21,646,000.00) | 96% |
| Class 3A (General Unsecured Claims) | 75.46% ($3,362,717.77) | 86.11% |
| Class 4 (Convenience Claims) | 97.74% ($116,407.59) | 95% |
| Class 6 (Interests in Subsidiary Debtors) | 100% | 100% |

## THE FIRST AMENDED PLAN

On March 3, 2004, the adjourned date for the confirmation hearing in connection with the Original Plan, the Debtors filed their First Amended Joint Plan of Reorganization (the "First Amended Plan"), which replaced the Original Plan. The First Amended Plan provided that all holders of the Senior Notes would be paid in full with post-petition interest in cash on the Effective Date, and that all allowed General Unsecured Claims would be paid in full in cash (without interest) on the later of the Effective Date and the date such claims become allowed claims. Whereas under the Original Plan, GMI preferred stock interests would have been cancelled and its holders would have received no distribution, under the First Amended Plan the preferred stock would have been reinstated and thereby rendered unimpaired. Lastly, the common stock interests (99.5% of which are owned by PII) would have been cancelled and shares of new common stock representing 100% ownership of the Reorganized Debtors would have been issued and distributed to PII in exchange for a capital contribution by PII in an amount of not less than $38 million or such additional amount as would have been required, together

-3-

with a proposed exit financing facility (in the maximum amount of $30 million), to fund the distributions contemplated by the First Amended Plan.

## THE SECOND AMENDED PLAN

On April 21, 2004, the Debtors filed the Second Amended Plan, which provided for the payment in full, plus post-petition interest, of the Senior Note Claims and payment in full of General Unsecured Claims and Convenience Claims, without interest. Under the Second Amended Plan, the preferred stock interests would have been cancelled and the holders of such interests would have received no distributions on account thereof. Lastly, the common stock interests would have been cancelled, the holders thereof would have received no distributions on account of such interests, and new shares of common stock representing 100% ownership of the Reorganized Debtors would have been issued to PII in exchange for a capital contribution by PII in an amount of not less than $38 million or such additional amount as would have been required, together with an exit financing facility (in the maximum amount of $30 million), to fund the distributions contemplated by the Second Amended Plan. A revised commitment letter for the exit financing facility was annexed as an exhibit to the Debtors' Amended Plan Supplement, dated June 29, 2004. Exhibit A to that commitment letter replaced and superceded Schedule 6.5 of the Second Amended Plan.

As reflected in affidavits of service on file with the Court, on April 28, 2004, and in accordance with the Scheduling Order Setting a Date for The Hearing On Confirmation of The Second Amended Plan and Establishing a Deadline for Filing Objections Thereto (the "Scheduling Order") entered on April 23, 2004, the Debtors mailed or caused to be mailed to the appropriate parties, by first class mail, the Notice of Confirmation Hearing setting forth, among other things, (a) the time fixed for filing objections to confirmation of the Second Amended Plan and (b) the time, date and place of the confirmation hearing in connection with the Second Amended Plan.

## THE THIRD AMENDED PLAN

On July 24, 2004, the Debtors filed their Third Amended Joint Plan of Reorganization dated as of July 23, 2004 (the "Third Amended Plan"), which replaced the Second Amended Plan. The terms of the Third Amended Plan were identical to the terms of the Second Amended Plan except that under the Third Amended Plan new common stock representing 100% ownership of the Reorganized Debtors would have been issued to GMI Holdings, LLC ("GMI Holdings"), instead of to PII. GMI Holdings was an entity formed by PII and Beate Uhse, AG ("Beate Uhse"). The issuance of such shares to GMI Holdings would have been in exchange for a capital contribution by GMI Holdings to the Reorganized Debtors in an amount required, together with a $22.5 million exit financing facility, to have funded the distributions contemplated by the Third Amended Plan. The Debtors' creditors would have received identical treatment under the Third Amended Plan as they would have received under the Second Amended Plan.

## THE FOURTH AMENDED PLAN

On August 11, 2004, the Debtors filed the Fourth Amended Plan, which replaced the Third Amended Plan. Under the Fourth Amended Plan, holders of the Debtors' Senior Notes that accepted the Original Plan will exchange such notes for one million shares of common stock of Reorganized GMI, representing 100% of the new common equity, plus up to $27 million principal amount of new seven-year notes. While the treatment is identical in terms of the dollar amount of the new seven-year notes to be distributed to holders of Class 2A Claims, the total principal amount of such notes is up to $38 million, as opposed to $30 million under the Original Plan. While such treatment is not identical to or better than that afforded to Class 2A under the Original Plan, the Original Plan was accepted by 24 of 25 holders that voted on the Original Plan. 100% of the 24 accepting votes were cast by claimants who have indicated their acceptance of the Plan in writing.

Holders of Allowed General Unsecured Claims, which claims aggregate approximately $12 million, will share pro rata in $2 million in cash and $11 million principal amount of the new seven-year notes, whereas under the Original Plan they would have shared pro rata in $2 million in cash and only $3 million in new seven-year notes. Holders of Convenience Claims will receive the lesser of (a) $2,000 of the allowed amount of such claim or (b) 40% of the allowed amount of such claim. Under the Original Plan, holders of Convenience Claims would have received the lesser of (a) $1,000 of the allowed amount of such claim or (b) 20% of the allowed amount of such claim.

Pursuant to the Fourth Amended Plan, as under the Original Plan, (i) all common stock and preferred stock interests will be cancelled and holders of such interests will receive no distributions on account thereof, (ii) majority control of the Reorganized Debtors will be vested in PET Capital Partners and its affiliates, and (iii) PII will receive no distributions on account of its stock.

## SETTLEMENT OF LITIGATION AND RELATED ISSUES

By Stipulation executed by the parties thereto on August 12, 2004 (the "Curtis Stipulation"), the Debtors, Curtis Circulation Company ("Curtis"), and the Committee agreed that: (i) upon the Effective Date, the Debtors shall have been deemed to reject that certain distribution agreement between the Debtors and Curtis dated September 19, 1977 (as amended, the "Distribution Agreement"); (ii) Curtis shall have an allowed general unsecured claim against the Debtors in the amount of $677,731.05 (the "Curtis Claim"); (iii) upon the Effective Date, the new distribution agreement by and among the Debtors and Curtis (the "New Distribution Agreement") shall become effective and in full force and effect; (iv) the Committee shall stipulate to the dismissal with prejudice of the adversary proceeding filed by the Committee against Curtis and shall waive and release any and all claims or causes of action it has or may have against Curtis, or its present or former officers, directors, employees, agents, heirs,

executors, administrators, successors, assigns, attorneys or affiliates; (v) upon the Effective Date, Curtis shall release all other claims that Curtis has or may have against the Debtors, their present and former officers, directors, employees, agents, heirs, executors, administrators, successors, assigns, attorneys or affiliates (including without limitation General Media International, Inc., Omni Publications International, Ltd., and their respective direct and indirect subsidiaries), either directly or indirectly, on Curtis' own behalf or on behalf of any other person or entity, with respect to any and all matters (other than the Curtis Claim against the Debtors) giving rise to the proof of claim filed by Curtis in these cases and/or arising from the Distribution Agreement, except for any sums that may be due to Curtis under the terms of the Curtis Stipulation; and (vi) upon the Effective Date, the Debtors and their direct and indirect subsidiaries shall release any and all claims or causes of action they have or may have against Curtis, or its present and former officers, directors, employees, agents, heirs, executors, administrators, successors, assigns, attorneys or affiliates, either directly or indirectly, with respect to any and all matters, except for any sums that may be due to Debtors under the terms of the Curtis Stipulation.

## PLAN CONFIRMATION

No objections to confirmation of the Third Amended Plan or the Fourth Amended Plan were filed. Curtis filed the sole limited objection to the Second Amended Plan, which objection was moot by its own terms if the Fourth Amended Plan was confirmed, the Curtis Stipulation was "so ordered" and the New Distribution Agreement was approved.[2] The Debtors filed (i) a memorandum of law in support of confirmation of the Fourth Amended Plan dated August 12, 2004 (the "Confirmation Memorandum"), (ii) the Fourth Amended Plan Supplement dated August 12, 2004 (as may be amended, the "Fourth Amended Plan Supplement"), (iii) the Declaration of James M. Sullivan in Support of Confirmation of the Fourth Amended Plan, sworn to August 12, 2004 (the "Sullivan Declaration"), and (iv) the Declaration of Cory Hill in

---

[2] Even though Curtis' limited objection was filed with respect to the Second Amended Plan, the substance of the Objection is applicable to the Fourth Amended Plan, inasmuch as both plans provide similar treatment with respect to Curtis' alleged claim.

Support of Confirmation of the Fourth Amended Plan, sworn to August 12, 2004 (the "Hill Declaration").

Based upon the Bankruptcy Court's review of the Disclosure Statement, Original Plan, Fourth Amended Plan, Fourth Amended Plan Supplement, GCG Declaration, Sullivan Declaration, the Hill Declaration and Confirmation Memorandum, and upon (a) all the evidence proffered or adduced at the Confirmation Hearing and memoranda filed in connection with, and arguments of counsel made at, the Confirmation Hearing, and (b) the entire record of these chapter 11 cases; and after due deliberation thereon and good cause appearing therefor,

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

(A)    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).  This Bankruptcy Court has jurisdiction over this case pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Fourth Amended Plan is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(L), and this Bankruptcy Court has exclusive jurisdiction to determine whether the Fourth Amended Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

(B)    Judicial Notice.  This Bankruptcy Court takes judicial notice of the docket of these chapter 11 cases maintained by the Clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered in the chapter 11 cases.   **SMB  8/13/04**

---

[3] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

(C)     <u>Burden of Proof</u>.  The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence.

(D)     <u>Transmittal and Mailing of Materials: Notice</u>.  The Disclosure Statement, the Original Plan, the ballots or notices of non-voting status, as the case may be, the Disclosure Statement Approval Order, and the Notice of Disclosure Statement Approval and Confirmation Hearing, which were transmitted and served as set forth in the GCG Declaration, shall be deemed to have been transmitted and served in compliance with the Disclosure Statement Approval Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient.  The Notice of Confirmation Hearing in connection with the Second Amended Plan shall be deemed to have been served in compliance with the Scheduling Order and the Bankruptcy Rules and such service was adequate and sufficient.  No other or further notice of the Fourth Amended Plan is necessary.

(E)     <u>Voting</u>.  Votes to accept or reject the Original Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Approval Order, and industry practice.  No re-solicitation of votes to accept or reject the Second Amended Plan, Third Amended Plan or Fourth Amended Plan was conducted or required.

(F)     <u>Classes deemed to have accepted the Original Plan</u>.  Classes 1 (Other Priority Claims), 2B (Other Secured Claims) and 3B (Intercompany Claims) are unimpaired and are deemed to have accepted the Original Plan pursuant to section 1126(f) of the Bankruptcy Code.

(G)     <u>Classes deemed to have accepted the Fourth Amended Plan</u>.  Classes 1 (Other Priority Claims), 2B (Other Secured Claims) and 3B (Intercompany Claims) are unimpaired and

are deemed to have accepted the Fourth Amended Plan pursuant to section 1126(f) of the Bankruptcy Code.

(H)    Class 2A (Senior Note Claims).  24 of 25 holders of Class 2A Claims that voted on the Original Plan voted to accept the Original Plan.  The 24 accepting holders have stated in writing that they accept the modified treatment provided by the Fourth Amended Plan.  Under Bankruptcy Rule 3019, Class 2A acceptance of the Original Plan is attributed to the Fourth Amended Plan.  **SMB  8/13/03   Even if the Court aggregated the votes of the "Bell affiliates" or the "Bell transferees," Class 2A would still have accepted the Plan for the reasons stated on the record.**

(I)    Class 3A (General Unsecured Claims) and Class 4 (Convenience Claims).  Class 3A and Class 4 voted to accept the Original Plan.  The Fourth Amended Plan provides better treatment of Classes 3A and 4 and does not materially or adversely impact Classes 3A and 4.  Under Bankruptcy Rule 3019, Classes 3A and 4 acceptances of the Original Plan are attributed to the Fourth Amended Plan.

(J)    Class 6 (Interests in Subsidiary Debtors).  Class 6 voted to accept the Original Plan.  The Fourth Amended Plan provides the same treatment for Class 6 and does not materially or adversely impact Class 6.  Under Bankruptcy Rule 3019, Class 6 acceptance of the Original Plan is attributed to the Fourth Amended Plan.

(K)    Classes deemed to have rejected the Original Plan and the Fourth Amended Plan.  Classes 5 (GMI Preferred Stock), 7 (GMI Common Stock) and 8 (GMI Warrants) will not receive any property under the Original Plan and therefore are deemed to have rejected the Original Plan and the Fourth Amended Plan pursuant to section 1126(g) of the Bankruptcy Code.

30393-002\DOCS_NY:6579.8

(L)     Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Fourth Amended Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(M)     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to the Administrative Expense Claims and Priority Tax Claims listed in Article II of the Fourth Amended Plan, which need not be designated, the Fourth Amended Plan designates ten (10) Classes of Claims and Interests.  The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Fourth Amended Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests.  The Fourth Amended Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(N)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Article IV of the Fourth Amended Plan specifies that Classes 1, 2B and 3B are unimpaired under the Fourth Amended Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(O)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Article IV of the Fourth Amended Plan designates Classes 2A (Senior Note Claims), 3A (General Unsecured Claims), 4 (Convenience Claims) and 6 (Interests in Subsidiary Debtors) as impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(P)     No Discrimination (11 U.S.C. § 1123(a)(4)).  The Fourth Amended Plan provides for the same treatment by the Debtors of each Claim or Interest in each respective Class unless

the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(Q)     Implementation of Fourth Amended Plan (11 U.S.C. § 1123(a)(5)).  The Fourth Amended Plan provides adequate and proper means for the Fourth Amended Plan's implementation, including, among other things, (i) the issuance of New GMI Common Stock and the new shares of common stock in the Subsidiary Debtors; (ii) the cancellation of existing securities, instruments, and other documentation; and (iii) the selection of directors and officers for the Reorganized Debtors.

(R)     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).  The Amended Certificate of Incorporation of GMI and the Amended By-laws of Reorganized GMI prohibit the issuance of nonvoting equity securities.  Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(S)     Designation of Directors (11 U.S.C. § 1123(a)(7)).  Section 8.3 of the Fourth Amended Plan and the Fourth Amended Plan Supplement provide for the selection of officers and directors of the Reorganized Debtors that is consistent with the interests of creditors, equity security holders, and public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

(T)     Additional Provisions (11 U.S.C. § 1123(b)).  The Fourth Amended Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

(U)     Bankruptcy Rule 3016(a).  The Fourth Amended Plan is dated and identifies the Debtors as its proponents, thereby satisfying Bankruptcy Rule 3016(a).

(V)     Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

(i)  The Debtors are proper debtors under section 109 of the Bankruptcy Code.

(ii)  The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

(iii)  The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Approval Order and the Scheduling Order in transmitting the Original Plan, the Disclosure Statement, the ballots or notices of non-voting status, as the case may be, and related documents in soliciting and tabulating votes on the Original Plan, and the Notice of Confirmation Hearing in connection with the Second Amended Plan.

(iv)  The Debtors are not required, pursuant to the applicable provisions of the Bankruptcy Code or the applicable Bankruptcy Rules, to transmit copies of the Fourth Amended Plan to those parties receiving copies of the Original Plan.

(W)  Fourth Amended Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have proposed the Fourth Amended Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Fourth Amended Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors.

(X)  Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the chapter 11 cases, or in connection with the Fourth Amended Plan and incident to the chapter 11 cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

(Y)  Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of the persons proposed to serve as directors and officers of the Reorganized Debtors after confirmation

-13-

of the Fourth Amended Plan have been fully disclosed in the Fourth Amended Plan and the

Fourth Amended Plan Supplement, and **SMB 8/13/04 for the reasons stated on the record,**

the appointment of such persons is consistent with the interests of holders of Claims against and

Interests in the Debtors and with public policy.  The identity of any insider that will be employed

or retained by the Reorganized Debtors and the nature of such insider's compensation have also

been fully disclosed.

(Z)    No Rate Changes (11 U.S.C. § 1129(a)(6)). After confirmation of the Fourth

Amended Plan, the Debtors' businesses will not involve rates established or approved by, or

otherwise subject to, any governmental regulatory commission. Thus, section 1129(a)(6) of the

Bankruptcy Code is not applicable in these chapter 11 cases.

(AA)   Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  The Fourth Amended Plan

satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis provided in the

Disclosure Statement and the Sullivan Declaration, and other evidence proffered or adduced at or

prior to the Confirmation Hearing (a) are persuasive and credible, (b) have not been controverted

by other evidence, and (c) establish that each holder of an impaired Claim or Interest either has

accepted the Fourth Amended Plan or will receive or retain under the Fourth Amended Plan, on

account of such Claim or Interest, property of a value, as of the Effective Date, that is not less

than the  amount that such holder would receive or retain if the Debtors were liquidated under

chapter 7 of the Bankruptcy Code on such date.

(BB)   Acceptance of Certain Classes of Original Plan (11 U.S.C. § 1129(a)(8)).  Classes

1, 2B and 3B were Classes of unimpaired Claims under the Original Plan and are conclusively

presumed to have accepted the Original Plan under section 1126(f) of the Bankruptcy Code.

Classes 5, 7 and 8 were not entitled to receive any property under the Original Plan and,

-14-

therefore, are deemed to have rejected the Original Plan under section 1126(g) of the Bankruptcy Code. Classes 2A, 3A, 4 and 6 have voted to accept the Original Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code.

(CC)    Acceptance of Certain Classes of Fourth Amended Plan (11 U.S.C. § 1129(a)(8)). Classes 1, 2B and 3B are Classes of unimpaired Claims under the Fourth Amended Plan and are conclusively presumed to have accepted the Fourth Amended Plan under section 1126(f) of the Bankruptcy Code. Classes 5, 7 and 8 are not entitled to receive any property under the Fourth Amended Plan and, therefore, are deemed to have rejected the Fourth Amended Plan under section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to the deemed rejecting Classes identified above, the Fourth Amended Plan is confirmable because the Fourth Amended Plan satisfies section 1129(b) of the Bankruptcy Code with respect to the deemed rejecting classes identified above.

(DD)    No Solicitation of Votes To Accept or Reject Fourth Amended Plan. Under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and as set forth in the Confirmation Memorandum, in light of the written acceptance of the modified treatment under the Fourth Amended Plan by all of the holders of Class 2A Claims that voted to accept the Original Plan, the enhanced treatment of Claims in Classes 3A and 4 relative to their treatment under the Original Plan, and the same treatment of Interests in Class 6 relative to their treatment in the Original Plan, which Classes 2A, 3A, 4 and 6 voted to accept, the Debtors are not required to have solicited votes to accept or reject the Fourth Amended Plan.

(EE)    Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims and Other Priority Claims pursuant to Article II and Article IV, respectively, of the Fourth Amended Plan satisfies the requirements of sections

1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims pursuant to Article II of the Fourth Amended Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

(FF)    Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)).  Classes 2A, 3A and 4, which were impaired under the Original Plan, accepted the Original Plan, determined without including any acceptance of the Original Plan by any insider.  Classes 3A and 4 are impaired under the Third Amended Plan, but are treated more favorably and are not materially or adversely impacted.  Accordingly, Classes 3A and 4 acceptances of the Original Plan are attributed to the Fourth Amended Plan, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.  Class 2A is impaired under the Fourth Amended Plan, but all the holders of Class 2A Claims that voted to accept the Original Plan have accepted in writing the modified treatment provided under the Fourth Amended Plan.  Accordingly, Class 2A acceptances of the Original Plan are attributed to the Fourth Amended Plan, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

(GG)    Feasibility (11 U.S.C. § 1129(a)(11)).  The Hill Declaration (a) is persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that confirmation of the Fourth Amended Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

(HH)    Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees payable under section 1930 of title 28, United States Code, will be paid on the Effective Date and thereafter as required, thus satisfying the requirements of section 1129(a)(l2) of the Bankruptcy Code.

(II)    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code.  This provision is inapplicable in the instant cases.  Although the Fourth Amended Plan contemplates the continuation of retiree benefits pursuant to section 1114 as required by section 1129(a)(13), the Debtors have not obligated themselves to pay any retiree benefits set forth in section 1114.

(JJ)    Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)).  Classes 5, 7 and 8 are deemed to reject the Fourth Amended Plan (collectively, the "Rejecting Classes").  Based upon the Sullivan Declaration and the evidence proffered, adduced, or presented by the Debtors at the Confirmation Hearing, the Fourth Amended Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by section 1129(b)(1) of the Bankruptcy Code.  In addition, with respect to a class of interests, the Fourth Amended Plan provides that the holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain under the Fourth Amended Plan on account of such junior Claim or Interest any property, in compliance with section 1129(b) of the Bankruptcy Code.  Thus, the Fourth Amended Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code.  Accordingly, upon confirmation and the occurrence of the Effective Date, the Fourth Amended Plan shall be binding upon the members of the Rejecting Classes.

(KK)    Principal Purpose of the Fourth Amended Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Fourth Amended Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

(LL)     Modifications to the Fourth Amended Plan.  Pursuant to Bankruptcy Rule 3019, modifications, if any, to the Fourth Amended Plan, including the Fourth Amended Plan Supplement and documents contained therein, do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Fourth Amended Plan.

(MM)     Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Bankruptcy Court in these chapter 11 cases, the Debtors and their respective directors, officers, employees, shareholders, members, agents, advisors, accountants, investment bankers, consultants, attorneys, and other representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Original Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125 (e) of the Bankruptcy Code and the exculpation provisions set forth in Article XII of the Fourth Amended Plan.

(NN)     Satisfaction of Confirmation Requirements.  The Fourth Amended Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

(OO)     Retention of Jurisdiction.  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Section 12 of the Fourth Amended Plan and section 1142 of the Bankruptcy Code.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      <u>Confirmation</u>.  The Fourth Amended Plan (as modified by the Fourth Amended Plan Supplement and this Order) is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Fourth Amended Plan and the Fourth Amended Plan Supplement are incorporated by reference into and are an integral part of the Fourth Amended Plan and this Confirmation Order.

2.      <u>Objections</u>.  All objections to confirmation of the Fourth Amended Plan that have not been withdrawn, waived or settled are overruled.

3.      <u>Plan Classification Controlling</u>.  The classifications of Claims and Interests for purposes of the distributions to be made under the Fourth Amended Plan shall be governed solely by the terms of the Fourth Amended Plan.  The classifications set forth on the ballots tendered to or returned by the Debtors' creditors and interest holders in connection with voting on the Original Plan (a) were set forth on the ballots solely for purposes of voting to accept or reject the Original Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Original Plan or the Fourth Amended Plan for distribution purposes, and (c) shall not be binding on the Debtors or the Reorganized Debtors.

4.      <u>Binding Effect</u>.  The Fourth Amended Plan, its provisions, and this Order shall be binding upon the Debtors and the Reorganized Debtors, any entity acquiring or receiving property or a distribution under the Fourth Amended Plan, and any holder of a Claim against or Interest in the Debtors, including all governmental entities (including without limitation all taxing authorities), whether or not the Claim or Interest of such holder is impaired under the Fourth Amended Plan, whether or not the Claim or Interest is Allowed, and whether or not such holder or entity has accepted the Fourth Amended Plan.

5.      Vesting of Assets (11 U.S.C. § 1141(b) and (c)).  Except as otherwise provided in the Fourth Amended Plan, the Debtors will continue to exist after the Effective Date as separate corporate entities, with all the powers of a corporation under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution, or otherwise) under applicable state law.  Except as otherwise expressly provided in the Fourth Amended Plan, upon the Effective Date all property of the Debtors' estates shall vest in the respective Reorganized Debtors, free and clear of all Claims, liens, encumbrances, charges, and other interests, and all such Claims, liens, encumbrances, charges, and other interests shall be extinguished.  From and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property, and compromise or settle any Claims and Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Fourth Amended Plan or this Confirmation Order.

6.      General Authorizations.  The Debtors and the Reorganized Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Fourth Amended Plan, including without limitation any securities issued pursuant to the Fourth Amended Plan.  The Debtors and the Reorganized Debtors and their respective directors, officers, members, agents, and attorneys, are authorized and empowered to issue, execute, deliver, file, or record any agreement, document, or security, including, without limitation, the documents contained in the Fourth Amended Plan Supplement, as modified, amended, and supplemented, in substantially the form included therein, and to take any action necessary or appropriate to implement, effectuate, and consummate the Fourth Amended Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Fourth Amended Plan, and any release, amendment, or restatement of any bylaws, certificates of incorporation, or other organization

documents of the Debtors, whether or not specifically referred to in the Fourth Amended Plan or the Fourth Amended Plan Supplement, without further order of the Bankruptcy Court, in their sole discretion, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

7.      Corporate Action.  The Reorganized Debtors shall file an Amended Certificate of Incorporation of Reorganized GMI with the Office of the Secretary of State for Delaware on the Effective Date.  The Amended Certificate of Incorporation of Reorganized GMI shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such certificates of incorporation as permitted by applicable law. The Amended By-laws of Reorganized GMI shall be deemed adopted by the board of directors of the Reorganized Debtors as of the Effective Date.

8.      Issuance of New Securities.  Pursuant to Article VII of the Fourth Amended Plan, based upon the record of the chapter 11 cases, including the instruments included in the Fourth Amended Plan Supplement but not limited to the issuance of shares of New GMI Common Stock, new shares of common stock in Subsidiary Debtors, and the New GMI Term Loan Notes, is hereby authorized without further act or action under applicable law, regulation, order, or rule.

9.      Securities Laws Exemption.  The offering, issuance, and distribution by the Reorganized Debtors of New GMI Common Stock and new shares of common stock in the Subsidiary Debtors is exempt from the provisions of section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer, issuance, distribution, or sale of a security by reason of section 1145(a) of the Bankruptcy Code.  The New GMI Common Stock and new shares of common stock in the Subsidiary Debtors will be freely tradable by the recipients thereof subject only to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(11) of the Securities Act of 1933, as amended, and compliance with any applicable rules and regulations of the Securities Exchange

Commission.

10. _Fourth Amended Plan Supplement_.  The documents contained in the Fourth Amended Plan Supplement and any amendments, modifications, and supplements thereto (to the extent consistent with the terms of the Fourth Amended Plan as the Debtors may approve and subject to the provision of same to the Committee), and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and approved, including, but not limited to, (i) the Amended Certificate of Incorporation of Reorganized GMI and Amended By-laws of Reorganized GMI, (ii) the New GMI Term Loan Notes Indenture, (iii) the General Unsecured Creditors' Payment Agent Agreement, (iv) the Agreements with Robert C. Guccione and Certain Non-Debtor Affiliates and (v) the Exit Financing Facility.  Without need for further order or authorization of the Bankruptcy Court, in their sole discretion, the Debtors and the Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Fourth Amended Plan Supplement that do not materially modify the terms of such documents and are consistent with the Fourth Amended Plan, except that if such modifications are proposed before substantial consummation of the Fourth Amended Plan, and materially and adversely affect the holders of General Unsecured Claims and Convenience Claims, the Debtors shall provide notice of such proposed modifications to the Committee.  If the Committee does not object to such modifications within three (3) business days of receipt of such notice, the modifications shall become effective.  If the Committee objects to the proposed modifications, the Court shall determine whether such modifications materially and adversely affect the holders of General Unsecured Claims and Convenience Claims.  Modifications which the Court finds materially and adversely affect holders of General Unsecured Claims and Convenience Claims shall not become effective absent a further order of the Court.

11. _Governmental Approvals Not Required_.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any

other governmental authority with respect to the implementation or consummation of the Fourth Amended Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Fourth Amended Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

12.     Exemption From Certain Taxes.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Fourth Amended Plan will not be taxed under any law imposing a stamp tax or similar tax.

13.     Distributions to Holders of Allowed Claims in Classes 2A, 3A and 4.  The provisions of section 6.2, including the provisions governing distributions, are hereby approved and found to be fair and reasonable.

14.     Assumption and Rejection.  Pursuant to section 7.1.1 of the Fourth Amended Plan, all executory contracts and personal property leases that exist between any Debtor and any person, including without limitation the executory contracts and personal property leases listed on Schedule 7.1(A) of the Fourth Amended Plan, shall be deemed assumed as of the Effective Date.  All executory contracts and personal property leases set forth on Schedule 7.1(B) of the Fourth Amended Plan shall be deemed rejected as of the Effective Date.  No executory contracts or personal property leases, other than those listed on Schedule 7.1(B) of the Fourth Amended Plan, shall be rejected after the Confirmation Date.  Under section 7.1.2 of the Fourth Amended Plan, all unexpired leases of nonresidential real property which have not been assumed nor are the subject of a motion to assume filed and served prior to the Confirmation Date shall be deemed rejected as of the Effective Date.  The inclusion of an executory contract or personal property lease on Schedule 7.1B of the Plan is not an admission by the Debtors or the Reorganized Debtors that such executory contract or personal property lease is valid or in full force and effect and not terminated or subject to termination and such schedule cannot be used as evidence to establish that any such contract or lease is in effect or enforceable against the

Debtors.

15.     Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases.  Proof of any claim for breach of an executory contract rejected pursuant to section 7.1.1 and Schedule 7.1(B) of the Fourth Amended Plan shall be served and filed with the Court no later than thirty (30) days after notice of entry of the Confirmation Order (the "Rejection Claims Bar Date"), or it shall be forever barred and discharged.  On or before the tenth (10th) Business Day following the date of entry of this Confirmation Order, the Debtors shall electronically file with the Bankruptcy Court and serve notice, in the form attached hereto as Exhibit A, of entry of this Confirmation Order and the Rejection Claims Bar Date upon those parties to executory contracts rejected pursuant to section 7.1.1 and Schedule 7.1(B) of the Fourth Amended Plan.

16.     Final Fee Applications.  All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred during the course of this case under section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code (i) shall serve and file with the Court their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is on or before 45 days after notice of entry of the Confirmation Order.  The Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course of business and without the need for Bankruptcy Court approval.

17.     Senior Note Indenture Trustee's Fees and Expenses.  As described in Section 6.2.4 of the Fourth Amended Plan, the Senior Note Indenture Trustee shall be entitled to the payment by the Reorganized Debtors of reasonable fees and expenses incurred in connection with the Senior Note Indenture Trustee's making distributions under the Fourth Amended Plan.

18.     Discharge of Claims and Termination of Interests; Discharge of Debtors.  The provisions of Sections 9.1, 9.2 and 12.3 of the Fourth Amended Plan are fair and reasonable and

are hereby approved.  Upon the Effective Date, all persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against, or canceled Interest in, the Debtors, subject to the limitations set forth in paragraph 19 herein.

19.    Releases, Exculpations, and Injunctions.  The release, exculpation, and injunction provisions contained in Section 12.3 of the Fourth Amended Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their chapter 11 estates, and such provisions shall be effective and binding upon all persons and entities, subject to the limitations set forth in paragraph 20 herein.  Notwithstanding anything to the contrary in the Fourth Amended Plan **SMB  8/13/04  or in this Order**, the aforementioned releases shall be limited to claims arising from the pre-petition conduct of the Debtors' businesses.

20.    Limitations on Discharges, Releases, Injunctions and Exculpations.  Subject to Sections 524 and 1141 of the Bankruptcy Code, the releases described herein shall not preclude police, tax or regulatory agencies from fulfilling their statutory duties.  Nothing contained in the Fourth Amended Plan or this Confirmation Order is intended or shall be construed (i) to release, exculpate, limit liability of or enjoin proceedings against any person or entity from fraud, gross negligence, willful misconduct, malpractice, criminal conduct, misuse of confidential information that causes damages, or ultra vires acts or (ii) limit the liability of the professionals retained by the Debtors, the Reorganized Debtors, the Committee and the Senior Note Indenture Trustee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.  Furthermore, all references in the Fourth Amended Plan and herein to DIP Lenders, the Committee, the Senior Note Indenture Trustee, officers, directors, managers, employees, attorneys, advisors or agents shall refer to such persons, solely in their capacity as DIP Lenders, the Committee, the Senior Note Indenture Trustee, officers, directors, managers, employees, attorneys, advisors or agents, respectively.

21.    Termination of Injunctions and Automatic Stay.  Unless otherwise provided in the

Fourth Amended Plan, all injunctions or stays arising under section 105 or 362 of the Bankruptcy Code, any order entered during the chapter 11 cases under section 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such order.

22. <u>Cancellation of Existing Securities and Agreements</u>. Except as otherwise expressly provided for in the Fourth Amended Plan and pursuant to Section 6.6 of the Fourth Amended Plan, except for purposes of evidencing a right to distributions under the Fourth Amended Plan or otherwise provided hereunder, on the Effective Date, all the agreements and other documents evidencing (i) any Claims or rights of any holder of a Claim against the Debtors, including all indentures and notes evidencing such Claims, (ii) any interests in the Debtors and (ii) any warrants to purchase such interests, obligating the applicable Debtor to issue, transfer or sell interests or any other capital stock of the applicable Debtors, shall be canceled.

23. <u>Compromise of Litigation and Related Issues</u>. Pursuant to Bankruptcy Rule 9019(a), the settlements and compromises embodied in the Curtis Stipulation shall be, and hereby are, authorized and approved and the Debtors are authorized to take any and all actions in accordance with the Curtis Stipulation. The compromises are fair and reasonable and in the best interests of the Debtors, their estates and creditors.

24. <u>Debtors Excused From Filing Expedited Sale Procedures</u>. In respect of the Debtors' Motion For Entry of an Order Excusing Debtors From Filing Expedited Sale Procedures Motion [Docket No. 395], upon the occurrence of the Effective Date of the Fourth Amended Plan, the Debtors shall be excused from complying with paragraph 13(a) through (f) of the Adequate Protection Stipulation and Order [Docket No. 338] requiring, <u>inter</u> <u>alia</u>, that the Debtors file a motion for approval of sale procedures and conduct an expedited auction in connection with the sale of all or substantially all of the Debtors' assets.

25. <u>Rejection of Distribution Agreement.</u> Pursuant to section 365 of the Bankruptcy

-26-

Code, the Debtors are authorized to reject the Distribution Agreement as of the Effective Date.

26. <u>Approval of New Distribution Agreement.</u>  The Debtors are authorized to enter into the New Distribution Agreement effective upon the Effective Date.

27. <u>Allowance of Curtis Claim.</u>  The Curtis Claim shall be allowed as a general unsecured claim against the Debtors in an amount not to exceed $677,731.05.  Curtis shall not be entitled to assert a claim against any of the Debtors for damages arising from or in connection with the rejection of any executory contract between Curtis and any of the Debtors pursuant to section 7.1.1 of the Fourth Amended Plan.

28. <u>Eleven Penn Plaza.</u>  Nothing in this Confirmation Order shall effect the rights of Eleven Penn Plaza, LLC ("Eleven Penn") as provided in (i) the Stipulation Providing for Rejection of Lease Pursuant to Section 365 of the Bankruptcy Code; Debtors' Limited Temporary Tenancy at Reduced Rent; Interim Lease Agreement; Option to Enter into New Lease; and Fixing Allowed Amount of General Unsecured Claim, by and between the Debtors and Eleven Penn and (ii) the Order Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Stipulation Between Debtor General Media, Inc. and its Landlord and Authorizing Debtor to Enter into Post-Petition Lease Agreements, dated April 15, 2004 (collectively, the "Stipulation Documents").  If there is any inconsistency between the Stipulation Documents and this Order or the Fourth Amended Plan, the Stipulation Documents shall govern.

29. <u>Exit Financing Facility.</u>  The Exit Financing Facility is hereby approved on terms equal or better than those set forth in Schedule 6.5 attached to the Fourth Amended Plan.

30. <u>Nonoccurrence of Effective Date.</u>  In the event that any of the conditions specified in Section 10.1 of the Fourth Amended Plan has not been satisfied or waived (in the manner provided in Section 10.3 of the Fourth Amended Plan) within sixty (60) days after entry of the Confirmation Order, then the Debtors may, upon notification to the Committee, the DIP Lenders, and the Bankruptcy Court, terminate the Fourth Amended Plan.  Upon termination of the Fourth

Amended Plan (a) the Confirmation Order shall be vacated, (b) no distributions under the Fourth Amended Plan shall be made, (c) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (d) all the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

31.     <u>Notice of Entry of Confirmation Order</u>.  On or before the tenth (10th) Business Day following the date of entry of this Confirmation Order, the Debtors shall electronically file with the Bankruptcy Court and serve notice of entry of this Confirmation on:  (a) attorneys for the DIP Lenders/Majority Noteholders, Milberg Weiss Bershad & Schulman LLP, One Pennsylvania Plaza, New York, New York 10119, Attn: Arnold N. Bressler, Esq. and Berkman, Henoch, Peterson & Peddy, P.C., 100 Garden City Plaza, Garden City, New York 11530, Attn: Ronald M. Terenzi, Esq.; (b) attorneys for the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey, 07068, Attn: Paul Kizel, Esq.; (c) attorneys for the Indenture Trustee, Golenbock Eiseman Assor Bell & Peskoe LLP, 437 Madison Avenue, New York, New York 10022, Attn: Douglas L. Furth, Esq.; (d) General Media, Inc., Two Penn Plaza, 11th Floor, New York, New York 10121, Attn: Laurence B. Sutter, Esq.; (e) the Office of the U. S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Brian S. Masumoto, Esq.; (f) those parties that have filed notices of appearance pursuant to Bankruptcy Rule 2002; (g) all persons or entities that filed timely proofs of claim; (h) all persons or entities listed in the Debtors' Schedules of assets and liabilities or any amendment(s) thereof (the "Schedules"), as holding liquidated, noncontingent, and undisputed claims, in an amount greater than zero; (i) all parties to executory contracts assumed pursuant to section 7.1.1 and Schedule 7.1(a) of the Fourth Amended Plan; (j) the SEC; (k) the IRS; (l) the DOJ; (m) the PBGC; and (n)

any entity that has filed with the Bankruptcy Court a notice of transfer of a claim under Bankruptcy Rule 3001(e) prior to the date of the Confirmation Hearing. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary. The Debtors also shall cause the Notice of Confirmation to be published as promptly as practicable after the entry of this Confirmation Order once in *The New York Times* (National Edition).

32. <u>Notice of Effective Date</u>. Within five (5) Business Days following the occurrence of the Effective Date, the Reorganized Debtors shall file notice of the occurrence of the Effective Date and shall serve a copy of same on parties set forth in paragraph 29, to be delivered to such parties by first-class mail, postage prepaid.

33. <u>Binding Effect</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Fourth Amended Plan, and the Fourth Amended Plan Supplement shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

34. <u>Non-Severability</u>. Each term and provision of the Fourth Amended Plan, as it may have been altered or interpreted by the Bankruptcy Court in accordance with Section 12.5 of the Fourth Amended Plan, is valid and enforceable pursuant to its terms.

35. <u>Conflicts Between Order and Plan</u>. To the extent of any inconsistency between the provisions of the Fourth Amended Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of this Bankruptcy Court.

36. <u>Incorporation by Reference</u>. Findings of fact and conclusions of law in the record of the Confirmation Hearing are fully incorporated herein by reference as if fully set forth herein.

37. <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over the chapter 11 cases after the Effective Date to the fullest extent permitted under the Bankruptcy

Code.

Dated: New York, New York
        August 13, 2004


                                        __/s/___STUART M. BERNSTEIN_____
                                        HONORABLE STUART M. BERNSTEIN
                                        CHIEF UNITED STATES BANKRUPTCY JUDGE

Robert J. Feinstein (RF-2836)
Maria A. Bove (MB-8687)
PACHULSKI, STANG, ZIEHL, YOUNG,
    JONES & WEINTRAUB P.C.
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777

Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENERAL MEDIA, INC., *et al.*, | ) | Case No. 03-15078 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## NOTICE OF REJECTION CLAIMS BAR DATE
## AND ENTRY OF CONFIRMATION ORDER

    **PLEASE TAKE NOTICE** that on August 12, 2004, the United States Bankruptcy Court for the Southern District of New York entered an Order Under 11 U.S.C. § 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming The Debtors' Fourth Amended Joint Plan of Reorganization (the "Confirmation Order").

    **PLEASE TAKE FURTHER NOTICE** that pursuant to the Confirmation Order, the Debtors rejected certain executory contracts and unexpired personal property leases set forth on Schedule 7.1B to the Fourth Amended Plan on file with the Bankruptcy Court, including your executory contract or unexpired personal property lease. Pursuant to the Confirmation Order, proof of any claim for breach of such executory contract or unexpired lease rejected pursuant to the Fourth Amended Plan shall be filed with the Court and served on the following: (a) attorneys for the Debtors, Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C., 780 Third Avenue, 36th Floor, New York, New York 10017, Attn: Robert J. Feinstein, Esq.; (b) attorneys for the DIP Lenders/Majority Noteholders, Milberg Weiss Bershad & Schulman LLP, One Pennsylvania Plaza, New York, New York 10119, Attn: Arnold N. Bressler, Esq. and Berkman, Henoch, Peterson & Peddy, P.C., 100 Garden City Plaza, Garden City, New York 11530, Attn: Ronald M. Terenzi, Esq.; and (c) attorneys for the Creditors' Committee, Lowenstein Sandler PC, 65

Livingston Avenue, Roseland, New Jersey, 07068, Attn: Paul Kizel, Esq., on or before thirty (30) days from the date of this Notice, or September ____, 2004, or such claim shall be forever barred and discharged.

Dated:  New York, New York
        August __, 2004
                              PACHULSKI, STANG, ZIEHL, YOUNG, JONES
                              & WEINTRAUB P.C.
                              Robert J. Feinstein (RF-2836)
                              Maria A. Bove (MB-8687)
                              780 Third Avenue, 36th Floor
                              New York, NY  10017-2024
                              Telephone: 212/561-7700
                              Facsimile:  212/561-7777

                              Attorneys for Debtors and Debtors in Possession